J-S09043-22

2022 PA Super 62

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D'ANGELO THOMAS | : | |
| | : | |
| Appellant | : | No. 1013 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 21, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002663-2019

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                     **FILED APRIL 12, 2022**

Appellant D'Angelo Thomas appeals from the judgment of sentence of three years' reporting probation entered in the Court of Common Pleas of Philadelphia County after he was found guilty of Firearms not to be carried without a license and Carrying firearms on public streets or public property in Philadelphia[1] following a stipulated bench trial.  After a careful review, we affirm.

The trial court set forth the relevant facts herein as follows:

> According to the testimony of Officer James Craig, on March 27, 2019 at approximately 2:53 p.m. he was on patrol with his partner Officer Burton. At this time, Appellant was observed operating [a] bicycle on the sidewalk in the area of the 2000 block of Windrim Avenue in the city and county of Philadelphia. N.T. 2/21/20 at p. 7-9. It is a violation of City Ordinance 12-808 for anyone over the age of 12 to ride their bicycles on the sidewalk.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 6106(a)(1) and 6108, respectively.

N.T. 2/21/20 at p. 9-10, 20. Officer Craig, without activating his siren, pulled over his marked patrol vehicle to inform Appellant that given his age he cannot ride the bicycle on the sidewalk and instead must ride it on the street. N.T. 2121/20 at p. 10. After pulling alongside Appellant, Officer Craig asked Appellant "Yo, can you hold up a second?" N.T. 2/21/20 at p. 10-11, 18, 20.[1] While Officer Burton was exiting the vehicle, Appellant pointed southbound and uttered something which Officer Craig could not hear. Immediately afterward, Appellant turned and ran northbound. While running northbound, Appellant reached into his wasteband [sic] and discarded a firearm which officers subsequently recovered. N.T. 2/21/20 at p. 10-11.

_____
[1] After a thorough cross-examination, this [c]ourt found that the exact statement by Officer Craig was "Yo, can you hold up for a second."

Trial Court Opinion, filed 7/19/21, at 1-2.

On February 21, 2020, immediately prior to the stipulated trial, the trial court denied Appellant's motion to suppress the firearm recovered at the scene. Appellant filed a timely notice of appeal on March 17, 2020, and on July 2, 2020, he filed his concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its Rule 1925(a) Opinion on July 19, 2021.

In his brief, Appellant presents a single claim for this Court's review:

Should the court below have found that there was a lack of probable cause to stop and chase Appellant, and therefore granted the motion to suppress physical finding that he was coerced to abandon the firearm recovered from the street by police?

Brief for Appellant at 2.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings

are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Williams***, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Id.*** at 27.

The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. ***In re L.J.***, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa.Super. 2017).

Appellant posits that if his circumstance is viewed objectively, it becomes evident he was forced to stop when the police officers approached him in a marked vehicle and asked him to "hold up for a second." He concludes that he was constitutionally coerced to run and abandon the firearm because the police had no requisite reasonable suspicion or probable cause to

stop him.  Brief for Appellant at 4-5.  In support of this contention, Appellant reasons as follows:

> [ ] Appellant abandoned his firearm *after* Officer Burton began to chase on foot and Officer Craig began to chase in a marked patrol vehicle. (N.T., 02/20/21 at 12-13). Considering the totality of the circumstances, when Officer Craig pulled up alongside Appellant with his marked patrol vehicle and asked him "ly]o, can you hold up a second" he was not free to leave. Alternatively and logically, if Appellant was free to leave when that was asked, because it was a 'mere encounter', then the police lacked reasonable suspicion or probable cause to chase Appellant which Officer Craig did with his patrol vehicle and his partner did on foot. (N.T. at 12). Thus, when Appellant fled and abandoned his firearm, it [sic] was coerced by an illegal stop and chase of the police.

*Id*. at 8 (emphasis in original).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures.  ***Commonwealth v. Morrison***, 166 A.3d 357, 363-64 (Pa.Super. 2017).  "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Hampton***, 204 A.3d 452, 456 (Pa.Super. 2019). Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law examines how the

interaction is classified and if a detention has occurred. ***Commonwealth v. DeHart***, 745 A.2d 633, 636 (Pa.Super. 2000).

The focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." ***Commonwealth v. Moultrie***, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting ***Commonwealth v. Blair***, 860 A.2d 567, 571 (Pa.Super. 2004)) (internal quotation marks omitted). "[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether...the citizen-subject has been seized." ***Commonwealth v. Strickler***, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000).

Contacts between the police and citizens fall within three, general classifications which are described as follows:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting ***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

Police officers must have reasonable suspicion that an individual is engaged in unlawful activity before subjecting that person to an investigative detention. **Commonwealth v. Cottman**, 764 A.2d 595 (Pa.Super. 2000).

An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

\* \* \*

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

**Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." **Cottman, supra** at 598-99 (quoting **Commonwealth v. Beasley**, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)) (holding that officer's displaying a police badge and asking an individual if he

or she would speak to the officer is a mere encounter). "These circumstances are to be viewed through the eyes of a trained officer." ***Commonwealth v. Jackson***, 907 A.2d 540, 543 (Pa.Super. 2006).

> In making this determination, we must give due weight...to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Young***, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted).

In addition,

> When initially evaluating the level of interaction between law enforcement and a citizen to determine if a seizure occurred, "courts conduct an objective examination of the totality of the surrounding circumstances." ***Commonwealth v. Lyles***, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014).

> The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. [W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.
> This Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. Officers may request identification or

question an individual so long as the officers do not convey a message that compliance with their requests is required. Although police may request a person's identification, such individual still maintains the right to ignore the police and go about his business. *Id.* at 350-51, 97 A.3d at 302-03 (internal citations and quotation marks omitted).

*Luczki*, *supra* at 543. Furthermore,

[a]though cases involving similar or comparable seizure determinations may serve as guideposts, a suppression court must independently employ the totality-of-the-circumstances test in determining whether a seizure occurred." *Lyles*, *supra* at 354, 97 A.3d at 305. ***See, e.g., id.*** (holding that no single factor controls in seizure-of-person analysis; police officer's request for identification alone does not raise escalatory inference of detention; courts must make independent examination of totality of circumstances surrounding interaction to determine if seizure occurred; concluding no "seizure" occurred in absence of credible evidence of physical restraint, weapons used, blockade or obstruction of citizen's ability to walk away; tenor of interaction was not inherently coercive); [**Commonwealth v.**] **Au**, [615 Pa. 330, 42 A.3d 1002 (2012)], (holding unrebutted testimony of officer established only mere encounter with Appellee had occurred, when officer interacted with Appellee in public, did not activate emergency lights, did not block Appellee's car, did not brandish weapon, make intimidating movement or overwhelming show of force, threat, or command, or speak in authoritative tone; use of officer's headlights and flashlight was in furtherance of officer's safety and within ambit of acceptable, non-escalatory factors);[**Commonwealth v.**] **Newsome**, [170 A.3d 1151 (Pa. Super. 2017)] (holding defendant was not "seized" during his initial interaction with officer, where officer responded to radio call in marked cruiser and saw Appellee walk away from group of males; officer exited his vehicle and told Appellee to "come here," but Appellee refused and continued to walk away; officer then observed Appellee remove object and place it in nearby flowerpot; object later recovered was firearm); [**Commonwealth v.**] **Young**, [904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (holding initial interaction with Appellee was mere encounter, when three officers in plainclothes exited an unmarked vehicle, approached Appellee on public street and asked Appellee what he was doing and whether he had anything on his person that could harm officers; two brief

questions constituted mere encounter, as there was no restraint of Appellee's liberty, no physical force, and no show of authority or level of coercion, beyond officer's mere employment, to convey demand for compliance or threat of tangible consequences from refusal). *Compare* [*Commonwealth v*. ] *Adams*, [651 Pa. 440, 205 A.3d 1196 (2019)] (holding interaction between police officer and defendant was investigative detention, where officer would not allow defendant to leave his vehicle; officer did not simply request that defendant stay in his car; instead, officer physically closed car door and barred defendant's exit; officer's action of physically closing door as defendant opened it communicated demand to remain in car at that location; officer's acts constituted type of escalatory factor that signals "seizure" by restraint of freedom); *Commonwealth v. Livingston*, 644 Pa. 27, 174 A.3d 609 (2017) (plurality) (holding interaction between police officer and defendant was investigative detention, where defendant's car was already parked on side of interstate highway, and officer pulled his patrol car alongside defendant's car, with his emergency lights activated, ostensibly under community caretaking function, but officer was unable to articulate specific and objective facts to suggest defendant needed assistance);[*Commonwealth v.*] *Hampton*, [204 A.3d 452 (Pa.Super. 2019)] (holding interaction between police officer and defendant was investigative detention, where defendant drove his vehicle from roadway into church field, and officer pulled her marked vehicle into field behind defendant's car, effectively blocking his exit, as defendant's vehicle was facing building so he could not travel forward). Importantly, "The issue of whether an individual has been seized is distinct from the issue of whether that seizure was reasonable." *Hampton*, *supra* at 458.

*Id*. at 546.

The Pennsylvania Supreme Court has instructed this Court to view "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements" when determining whether an officer's conduct is a mere encounter with a citizen or amounts to a seizure. *Commonwealth v.*

*Mendenhall*, 552 Pa. 484, 715 A.2d 1117, 1119 (1998). The following, non-exclusive list of factors is also relevant to the inquiry:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Parker*, 161 A.3d 357, 363 (Pa.Super. 2017).

The trial court set forth its reasoning for denying the motion to suppress as follows:

> Here, Officer Craig's words are significant. Officer Craig asked "Yo, can you hold up a second?" Taken literally, Appellant with [sic] an option to decline the encounter. He was as informed him [sic] that any potential encounter would be extremely brief. Further, there was no testimony that Officer Craig activated his sirens at any point, despite being in a marked vehicle. Instead, Officer Craig pulled over and asked if Appellant could hold on for a second. At that point, Officer Burton exited the vehicle for a mere encounter. This was not a show of force sufficient to make a person feel they [sic] were not free to leave or terminate the encounter. Instead, this was viewed as the most professional manner of notifying Appellant that he should be riding his bicycle on the street as opposed to the sidewalk because it was in violation of a city ordinance. Appellant opted to run and abandon a firearm in his possession. This interaction did not go beyond a mere encounter, since the encounter would have been voluntary as evidenced by the language used by Officer Craig. The facts of this case are similar to <u>Newsome</u>, however in Newsome [sic] the defendant was instructed to "stop for a minute" while here Appellant was asked to "hold up a second." Given the totality of the circumstances, this encounter did not rise to the level of an investigative detention.

Trial Court Opinion, filed 7/19/21, at 5.

In the alternative, the trial court found that since Appellant's contact with Officers Craig and Burton constituted a mere encounter, there was no need to show they had reasonable suspicion before they approached him, which is required only where an interaction rises to the level of an investigative detention. However, the court found reasonable suspicion that Appellant had violated City Ordinance 12-808 existed, and in doing so stated:

> Appellant was observed riding a bicycle in violation of Philadelphia City Ordinance 12-808.[2] While such a violation only entails a citation and a small fine, the issuance of a citation necessarily involves a brief period during which a pedestrian or a subject of a vehicle stop will not be free to leave while the officer obtains information from an individual. **See** 75 Pa.C.S. § 6308(b) (authorizing an officer conducting a traffic stop to check "the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or ... secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of the Motor Vehicle Code["]); Pa.R.Crim.P. 403(A)(2) (requiring that a citation contain the name and address of the defendant).
>
> Here, Officer Craig witnessed the violation by Appellant. As a result he was justified in stopping Appellant for purposes of issuing a citation, or in this case simply warning [ ] Appellant that he was in violation of said ordinance. Regardless of the nature of the offense, Officer Craig was permitted to temporarily detain Appellant to either issue a citation or warn him he was in violation of a city ordinance as explicitly authorized by 75 Pa.C.S. § 6308(b). Since Appellant almost immediately fled and abandoned his property during the flight, there is no need to address Appellant's second issue, since no pat-down occurred. Regarding the issue of forced abandonment, that issue becomes moot since no illegal stop occurred.
>
> ───────
> [2] § 12-808. Riding on Sidewalks.
>
> (1) No person shall ride a bicycle upon a sidewalk, except as follows:

- 11 -

(a) Children under the age of twelve may ride on the sidewalk, other than in a business district as defined in the Vehicle Code.

(b) Riding a bicycle on the sidewalk is permitted where appropriate signs are posted for shared pedestrian and bicycling use by the Department of Streets at locations determined by the Department by regulation, safety, existing and expected density of use by pedestrians and bicyclists, motorist safety, traffic flow, and the free ingress and ...

*Id*. at 5-6, 7-8.[2]

Following our review, we find the initial interaction between the officers and Appellant was limited, informal, and carried all the hallmarks of a mere encounter. On March 27, 2019, at approximately 2:53 p.m., Officers Craig and Burton observed Appellant riding a bicycle on the sidewalk in the 2000 block of Windrim Street which is a violation of City Ordinance 12-808. N.T., 2/21/20, at 9-10. Officer Craig indicated that he normally does not write tickets for such a violation. Instead, he advises individuals on the law and informs them they should be riding on the street, not on the sidewalk. *Id*. at 10. As the officers approached in their marked patrol vehicle, Appellant crossed over to Germantown Avenue. *Id*. at 10.

The officers pulled up next to Appellant at which time Officer Craig asked "Yo, can you hold up for a second?" Appellant, who was within five feet of the patrol car on the passenger side, stopped and stepped off the bicycle, at which time Officer Burton, without speaking, exited the vehicle. *Id*. at 10-12.

_____

[2] The trial court's footnote ended with an ellipsis.

Appellant then pointed southbound, said something, and began to run northbound, at which time he "reached into his waistband with his right hand and threw a firearm onto the 4500 block of Germantown." *Id*. at 10-11. Only about one second passed between the time Officer Burton got out of the vehicle and Appellant started to run away. *Id*. at 12. At no point did either officer have his gun drawn, tell Appellant he could not leave, or even get within arm's reach of Appellant. *Id*. at 12.

The above testimony evinces that the only verbal interaction prior to the time Appellant stepped off his bicycle, ran from the police, and abandoned his firearm was initiated by Officer Craig's asking whether Appellant "can [ ] hold up for a second?" while both officers were in the patrol car. In doing so, Officer Craig conveyed no demand for compliance or threatened any consequences for non-compliance; he merely asked if he could speak to Appellant. Then, without provocation, Appellant attempted to avert the officers' attention before he ran and threw his firearm as Officer Burton had begun to exit the patrol car.

The record is devoid of any evidence suggesting that either officer activated the emergency lights of the patrol car, brandished his weapon, or engaged in an overwhelming show of force. Further, neither officer used a commanding tone of voice or informed Appellant that he was not free to leave, nor was there any evidence presented that either positioned himself in a manner that obstructed Appellant's ability to continue walking down the street

***See Mendenhall, supra***; ***Newsome, supra***.  Quite the opposite is true, as

Appellant ran away from them after trying to divert their attention.

As our Supreme Court has stated:

> These were permissible acts that do not implicate the Fourth Amendment or Article I, § 8. Therefore, any "escalation" perceived by appellant or by the officer did not render the request objectively unconstitutional. The request was not accompanied by physical restraint, manifestation of authority, or a mandate to comply. The officer simply asked for appellant's identification; he did not demand it or require acquiescence, and appellant gave it to him voluntarily. The officer did not express dissatisfaction with appellant's reply or tell appellant he was not free to leave. There is no evidence appellant was confined or prevented from departing, or that the officer impeded his movement in any way, as the interaction took place on a public street in broad daylight. There was no evidence the officer brandished a weapon or threatened appellant or that the interaction was *per se* coercive or intimidating. There is no record of the officer displaying an aggressive demeanor or using an authoritative tone suggesting there would be negative consequences if appellant failed to identify himself; he did nothing more than request appellant's identification. Had there been no repetitive furtive conduct by appellant, there is no reason to think the encounter would not have terminated promptly once the officer recorded the minimal information he requested.
>
> ***
>
> Although he also testified he believed appellant was not free to leave while he was recording the information, this was not affirmatively expressed to appellant. And as noted, the officer's subjective views are as immaterial to the objective standard as are appellant's. ***See Commonwealth v. Lagana***, 517 Pa. 371, 537 A.2d 1351, 1355 n. 4 (1988) (citation omitted) ("The test of when a person is arrested is an objective one and depends upon the reasonable impression conveyed to the person seized and not the subjective view of the officers or the person being seized.").

***Commonwealth v. Lyles***, 626 Pa. 343, 355–56, 97 A.3d 298, 306-07

(2014).

- 14 -

In viewing the totality of the circumstances surrounding the incident herein, we find the initial interaction did not escalate beyond a mere encounter which did not require any level of suspicion. ***See Luczki, supra***; ***Newsome, supra***; ***Bryant, supra***; ***Au, supra***; ***Goldsborough, supra***; ***Young, supra***. Because the trial court's factual findings are supported by the record, its ruling on Appellant's suppression motion was proper. ***Luczki, supra***. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022