J-S42013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                          :
                     v.                     :
                                          :
                                          :
JYMEIN BRIAN CHANDLER          :
                                          :
             Appellant         :       No. 1252 WDA 2021

Appeal from the Judgment of Sentence Entered September 20, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001157-2020

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:         **FILED: DECEMBER 15, 2022**

Jymein Brian Chandler appeals from the judgment of sentence of ten to twenty years of incarceration imposed after the trial court convicted him of aggravated assault and related charges.  We affirm.

On November 15, 2019, Allegheny County Police Detectives Jaison Mikelonis and Timothy Capp were working a crime suppression detail in Homestead, Pennsylvania, due to a recent uptick in firearm-related violence. ***See*** N.T. Suppression Hearing, 5/26/21, at 5-6.  At approximately 7:55 p.m., the detectives were driving on 16th Avenue when they observed Appellant walking on the sidewalk.  ***Id***.  Appellant was walking with both hands in his pockets, but only his right-arm was "strongly canted in his right pocket."  ***Id***. at 7-8.  Based on Detective Mikelonis's "extensive training," he believed that

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant may be carrying a firearm. *Id*. Accordingly, without displaying police lights or weapons, the detectives stopped their vehicle alongside Appellant, identified themselves, and requested to speak with Appellant through the open car window. *Id*. Appellant "immediately responded that he was [seventeen] years old, [so] we could not talk to him and we could not search him," but also "stopped on the sidewalk and just stayed there." *Id*. at 8. Since Appellant appeared to be underage and in possession of a firearm, Detective Mikelonis exited the vehicle and began to walk towards Appellant. *Id*. at 8-9. As he approached, Detective Mikelonis observed what he believed to be the outline of the barrel of a firearm protruding through Appellant's right coat pocket. *Id*. at 9. Detective Mikelonis informed Appellant that he was going to conduct a weapons frisk, which revealed an object that he immediately recognized as a firearm. *Id*. Detective Mikelonis then advised Appellant that he was under arrest. After a brief scuffle, during which Appellant assaulted both detectives and threw the firearm, Appellant was arrested and the loaded Taurus PT 111 Pro 9mm handgun was recovered.

Appellant was charged with two counts of aggravated assault, and one count each of persons not to possess firearms, receiving stolen property ("RSP"), disarming a law enforcement officer, possession of a firearm by a minor, resisting arrest, possession of marijuana, and carrying a firearm without a license. Appellant filed a pre-trial suppression motion, contending that the police officers conducted an investigative detention without the necessary reasonable suspicion that Appellant was engaged in criminal activity

- 2 -

because the detectives stopped him solely based on the "canted" posture of his right arm. *See* Omnibus Pretrial Motion, 7/21/20, at 5. Appellant argued that since the detectives did not see the outline of the firearm until after the investigative detention had commenced, the firearm was illegally recovered. *Id*.

On May 26, 2021, the trial court held a hearing on the suppression motion. The Commonwealth presented the testimony of Detective Mikelonis who detailed his interaction with Appellant. *See* N.T. Suppression Hearing, 5/26/21, at 5-23. Afterwards, both parties argued their respective positions and the court denied the motion, determining that the stop transitioned from a mere encounter to an investigative detention after the detectives exited the vehicle and approached Appellant on foot. *Id*. at 33-35. The trial court credited Detective Mikelonis's testimony that before he exited the vehicle, he observed Appellant walking with a "canted" right arm in a high crime area and was aware that Appellant could not legally possess a firearm. *Id*. at 7-8. After exiting the vehicle, Detective Mikelonis witnessed the barrel of a firearm protruding from Appellant's coat pocket. *Id*. at 9. The trial court found that these three factors taken together constituted the necessary reasonable suspicion the detectives needed to initiate an investigative detention of Appellant. *Id*. at 34-35. Accordingly, the court concluded that the pat down was legal and the firearm admissible. *Id*.

Appellant proceeded directly to a non-jury trial at which he was convicted of persons not to possess firearms, carrying a firearm without a

license, possession of a firearm by a minor, resisting arrest, and the aggravated assault of Detective Capp. The trial court found Appellant not guilty of the remaining charges. Sentencing was deferred pending preparation of a presentence investigation report.

On August 18, 2021, the Commonwealth filed notice of its intent to seek mandatory-minimum sentencing pursuant to 42 Pa.C.S. § 9714 (sentencing for second and subsequent offenses). On September 20, 2021, Appellant appeared for sentencing. The trial court imposed the mandatory minimum sentence of ten to twenty years for the aggravated assault conviction. No further penalty was imposed at the remaining counts. Appellant did not file a post-sentence motion. Instead, this timely direct appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issue for our review: "Whether the trial court erred in denying [Appellant's] motion to suppress?" Appellant's brief at 6.

Preliminarily, we set forth our standard of review:

An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider [the evidence offered by the Commonwealth and] only the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

- 4 -

*Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted).  Where the issue on appeal relates solely to a suppression ruling, we examine "only the suppression hearing record" and exclude from consideration "evidence elicited at trial."  *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017).

Both the United States and Pennsylvania Constitutions provide coterminous protections against "unreasonable searches and seizures."  *See Interest of T.W.*, 261 A.3d 409, 418 (Pa. 2021).  The law recognizes three distinct levels of interaction between police officers and citizens:  (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention.  *See Commonwealth v. Mackey*, 177 A.3d 221, 227 (Pa.Super. 2017).  Our Supreme Court recently reiterated the requirements that distinguish the classifications of contacts between the police and the citizenry as follows:

> The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity.  This interaction also does not compel the citizen to stop or respond to the officer.  A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way.  The second type of interaction, an investigative detention, is a temporary detention of a citizen.  This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot.  The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause.  A custodial detention also constitutes a seizure.
>
> No bright lines separate these types of [interactions], but the United States Supreme Court has established an objective test by

which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. [W]henever a police officer accosts an individual and restrains his freedom to walk away, [the officer] has "seized" that person.

*Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019). Whether a seizure has occurred, under the circumstances related in the undisputed testimony at a suppression hearing, is a question of law involving a plenary scope of review. *See Commonwealth v. Au*, 42 A.3d 1002, 1006 (Pa. 2012).

When initially evaluating the level of interaction between law enforcement and a citizen to determine at what point a seizure occurred, "courts conduct an objective examination of the totality of the surrounding circumstances." *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014). Relevant factors of that analysis include, but are not limited to, the following: "the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked." *Commonwealth v. Luczki*, 212 A.3d 530, 543 (Pa.Super. 2019) (internal quotation marks omitted).

Faced with the above summarized facts, the trial court pinpointed the transition between a mere encounter and an investigative detention as

occurring after the detectives observed the outline of the firearm, when the detectives informed Appellant that they were going to subject him to a pat down. **See** Trial Court Opinion, 4/7/22, at 5-6. Appellant disputes the trial court's timing determination. In his view, the interaction became an investigative detention once the detectives asked Appellant a question, exited their vehicle, and began approaching him. **See** Appellant's brief at 25-26.

In contrast, relying on **Commonwealth v. Thomas**, 273 A.3d 1190 (Pa.Super. 2022), and **Commonwealth v. Newsome**, 170 A.3d 1151 (Pa.Super. 2017), the Commonwealth contends that the acts of asking Appellant a question and exiting the vehicle did not transition the interaction from a mere encounter to an investigative detention. **See** Commonwealth's brief at 6. Instead, the Commonwealth alleges that the trial court correctly determined that the interaction transitioned to an investigative detention when the officers informed Appellant that they intended to conduct a weapons frisk of his person. **Id**. By then, the officers had observed the barrel of the firearm and knew Appellant was underage, which gave them the requisite reasonable suspicion that Appellant engaged in criminal activity. Therefore, the investigative detention was valid, and the firearm was legally recovered. We agree with the Commonwealth.

In **Thomas**, **supra**, two police officers observed the defendant operating a bicycle on a Philadelphia sidewalk, which was in violation of a city ordinance since the defendant was over the age of twelve. Without activating

their siren, the police pulled their vehicle alongside the defendant, informing him that he was violating the city ordinance. Afterwards, one of the officers asked the defendant, "Yo, can you hold up a second?" *Id*. at 1201. While the other officer exited the vehicle, the defendant pointed and uttered something unintelligible before running in the opposite direction. As he fled, the defendant reached into his waistband and discarded a firearm, which the officers later recovered.

The defendant unsuccessfully sought suppression of the firearm contending that his abandonment of the firearm was coerced because the police did not have the reasonable suspicion needed to stop him. A prior panel of this Court affirmed the suppression court's denial, finding that the interaction had remained a mere encounter even after the officer exited his vehicle. *Id*. at 1201. Since the officers did not demand compliance, threaten consequences for non-compliance, obstruct the defendant's ability to continue walking down the street, activate their lights and sirens, brandish a weapon, or make any show of force, the totality of the circumstances demonstrated that the interaction was a mere encounter and the defendant's flight was unprovoked. *Id*.

Similarly, in **Newsome**, a police officer responded to an anonymous radio call that several individuals were passing around a firearm in an area known for shootings. When he arrived, the officer observed a group of men huddled together and two individuals walking away. The officer exited his

vehicle and "asked" one of the individuals walking way, later identified as the defendant, "to come here" so he could talk to him. *See Newsome*, *supra* at 1153. However, the defendant refused and continued walking down the street. As the defendant walked away, the officer "asked [defendant to stop]" two more times. *Id*. at 1156. Once the defendant was approximately eight feet away, the officer observed the defendant dispose of what appeared to be a handgun in a nearby flowerpot. Thereafter, another officer recovered a firearm from the flowerpot. The defendant was arrested and charged with possessing the firearm without a license.

The defendant sought suppression of the firearm, contending that the officer lacked the reasonable suspicion needed to stop or question him. The trial court granted the motion and the Commonwealth appealed. On appeal, this Court examined the circumstances surrounding the interaction and found that the initial interaction with the defendant was a mere encounter that developed into a lawful investigative detention after the officer observed the defendant discard the firearm. In reaching this conclusion, we considered the totality of the circumstances, finding that they failed to support a conclusion that the defendant had been seized during his initial encounter with the officer. Specifically, we found that the officer had not engaged his vehicle's siren or lights, brandished a weapon, engaged in an overwhelming show of force, told the defendant he was not free to leave, or obstructed his ability to continue walking. While the officer had acknowledged that he "asked [the defendant]

to stop" two or three times, there was no evidence that the officer threatened any consequences for non-compliance or used an authoritative tone. *Id*. at 1156. Accordingly, we reversed and remanded the trial court's grant of the defendant's motion to suppress, explaining that a request to "come here" so that the officer could talk to the defendant "was not a substantial impairment on the defendant's liberty of movement, particularly considering the officer's legitimate concerns for the safety of the community[.]" *Id*.

Instantly, the court explained that the request to speak with Appellant constituted a mere encounter that later transitioned to an investigative detention by stating:

> . . . once [Appellant] says I am [seventeen], he announces to the police that he is under age. If he would have said I am [twenty-two], it's not the same case. It's not the same case at all.
>
> But he says I'm [seventeen]. And he looks like he's young enough to be [seventeen]. And if I said I am [seventeen], that wouldn't go very far. But he looks like he could be 17 and he's saying it in a way like I don't want to be bothered by you. So it appears he is saying I have the ability to not be bothered by you, here's why. They rely on what he says as to his age.
>
> They get out of the car. They still haven't stopped him, as that term is meant in investigation detention. And as they approach, they see what appears to be the barrel of a gun in his jacket. What appears to be the barrel of a gun coupled with the way his arm is positioned and his announcing his age, in my view, give the police the right to conduct an investigative detention at that time, not before.
>
> But those three things coming together—granted, the police were out of the vehicle, but they are allowed to get out of their vehicle. They could have just followed [Appellant] down the street and just sort of walked behind him. I mean, they are legally entitled to walk down the street too.

> So I don't find any use of police authority in a way that compromised [Appellant's] rights under the federal and/or state constitutions. The motion to suppress is denied.

*Id*. at 33-35. In its Rule 1925(a) opinion, the trial court provided a succinct summation of relevant legal precedent before espousing on its position further, reasoning:

> In this case, this [c]ourt believes that the initial interaction between the detectives and [Appellant] was a mere encounter. The detectives were simply driving in their police vehicle and asked to speak to [Appellant]. [Appellant's] liberty was not restricted and he was under no compulsion to speak with the detectives. This Court also believes that the interaction transformed into an investigatory detention after [Appellant] informed the detectives that he was [seventeen] year[s] old and Detective Mikelonis believed he observed a firearm sticking out from [Appellant's] pocket. At this point, Detective Mikelonis informed [Appellant] that Detective Mikelonis was going to perform a pat-down. This [c]ourt believes that the investigatory detention was firmly supported by reasonable suspicion that criminal activity was afoot. [Appellant's] own words provided reasonable suspicion that [Appellant] was [seventeen] years old. Detective Mikelonis'[s] observation of a firearm concealed on [Appellant's] person provided reasonable suspicion that [Appellant] was committing a crime. The investigative detention was legal.

Trial Court Opinion, 4/7/22, at 5-6.

We agree that the totality of the circumstances support a finding that the initial interaction between the detectives and Appellant was a mere encounter. The encounter involved no police lights, guns drawn, intimidating movement, show of force, obstruction, physical restraint, or even a commanding tone of voice. *See Thomas*, *supra* at 1201; *see also Newsome*, *supra* at 1156. The detectives did not demand compliance, but

merely asked if they could speak with Appellant, which amounted to a less intrusive question than the requests deemed consistent with a mere encounter in **Thomas** and **Newsome**. Thus, consistent with **Thomas** and **Newsome**, the act of posting a question and exiting the vehicle, without more, did not amount to an investigative detention. Therefore, we find record and precedential support for the trial court's conclusion that the initial interaction was a mere encounter which did not require any level of suspicion. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2022