J-S09010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| EUGENE VOLANSKY | : | |
| Appellant | : | No. 1831 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 13, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000339-2023

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                      **FILED MAY 30, 2024**

Eugene Volansky appeals from his judgment of sentence entered on June 13, 2023, for his conviction of driving while operating privilege is suspended or revoked.[1] Volansky asserts the trial court erred in denying his motion to suppress. After careful review, we affirm.

On September 16, 2022, Officer Steven Ambs observed a black Mercedes sedan and ran the registration. The registration showed the owner of the vehicle to be a woman in her 60s, but Officer Ambs saw a bald, white, middle-aged man with facial hair driving the sedan. The male was the only person in the sedan. Officer Ambs ran the registration through JNET, Pennsylvania's Justice Network, which shows any contacts that the vehicle has

_____

[1] 75 Pa.C.S.A. § 1543(b)(1)(iii).

had with police. JNET showed that a "Boris Volansky" and a "Mark"[2] both had contacts with police while in the sedan. Officer Ambs pulled up Boris Volansky on NCIC, the National Crime Information Center, and saw his driver's license was suspended. Officer Ambs pulled up a photograph of Boris Volansky through JNET and the photograph matched the driver of the sedan "to a T." N.T. Suppression Hearing, 5/30/23, at 8. Officer Ambs initiated a traffic stop of the sedan.

After obtaining the driver's license, which identified the driver as Eugene Volansky, Officer Ambs said, "You look like your brother, Mark."[3] *Id.* at 15. Even after being provided with Eugene Volansky's license, he "need[ed] to make sure it was definitely Eugene" because "he looked very similar to his brother" so Officer Ambs ran Eugene's information through his in-car computer to confirm. *Id.* Officer Ambs confirmed that the driver was Eugene Volansky and found Eugene's driver's license was suspended for a prior driving under the influence offense. Officer Ambs issued a ticket for driving while operating privilege is suspended. As Volansky had two prior convictions for

---

[2] While both Volansky and the Commonwealth note in their respective briefs to this Court that Mark is referring to Mark Volansky, Officer Ambs testified at the suppression hearing that he did not recall Mark's last name. *See* Appellant's Brief, at 5; Appellee's Brief at 9; N.T. Suppression Hearing, 5/30/23, at 16.

[3] Officer Ambs was wearing a body-worn camera and although played at the suppression hearing and relied upon by the trial court, it has not been provided to this Court for review.

driving while operating privilege is suspended, the charge was graded as a misdemeanor of the third degree. **See** 75 Pa.C.S.A. § 1543(b)(1)(iii).

On May 18, 2023, Volansky filed a motion to suppress, challenging the legality of the traffic stop. A hearing was held on May 30, 2023. During the hearing, Officer Ambs explained that his comment about Mark was a mistake because when he ran the contacts with the sedan, a "Mark" came up too. At the suppression hearing, Officer Ambs testified as follows:

> That was misspoken by me. Again, all the contacts with the car, there was a Mark, too, in the contacts, but the person I ran and pulled up the picture, was Boris.

N.T. Suppression Hearing, 5/30/23, at 16. Officer Ambs confirmed he pulled up a photograph of Boris Volansky, whose appearance matched the driver of the sedan, and confirmed Boris Volansky's driver's license was suspended prior to conducting a traffic stop on the sedan.

After the testimony concluded, both the Commonwealth and Volansky argued their respective positions. Volansky's counsel argued that Officer Ambs did not have reasonable suspicion to stop the sedan because, when he spoke with the driver, he called the driver Mark: "If he had said, [']You're Boris and your license is suspended[,'] I would say I wouldn't have even filed this motion." **Id.** at 24. The Commonwealth argued that Officer Ambs testified credibly that he simply misspoke and that there was sufficient evidence for the court to find Officer Ambs had reasonable suspicion that Boris Volansky was driving the sedan. At the conclusion of the hearing, the trial court denied

the motion, finding Officer Ambs' explanation credible. The parties immediately proceeded to a waiver trial and incorporated the testimony from the suppression hearing. The Commonwealth supplemented the record and the trial court found Volansky guilty.

On June 13, 2023, the trial court sentenced Volansky to 12 months of restrictive probation with the first 90 days to be served in the Bucks County Correctional Institute, the second 90 days to be served in home confinement, and the remainder to be served on standard probation. The trial court also imposed a $2,500 fine. Volansky timely appealed and complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Volansky raises one issue for our review:

> Did the trial court err in denying Appellant's [m]otion to [s]uppress where the officer did not have reasonable suspicion to conduct a traffic stop of the vehicle?

Appellant's Brief, at 7.

> The standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. … Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

> It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Bush*, 166 A.3d 1278, 1282 (Pa. Super. 2017) (citations, brackets, and quotation marks omitted).

Before we address the merits of Volansky's issue, we must first address the Commonwealth's assertion that Volansky waived his claim. *See* Appellee's Brief, at 8-10. Upon a thorough review of the suppression hearing, it is clear that Volansky was solely challenging the credibility of the officer. *See* N.T. Suppression Hearing, 5/30/23, at 23-24. Volansky does not challenge the credibility of the officer in this Court, and instead argues that the trial court erred in finding the facts support reasonable suspicion for the traffic stop. *See* Appellant's Brief, at 9-12. It is axiomatic that a "new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. Jefferson*, 256 A.3d 1242, 1252 (Pa. Super. 2021) (*en banc*) (citation omitted). Thus, this claim is waived.

However, to assure that we provide Volansky with his sole opportunity to challenge his conviction, we must find that even if there were no waiver, Volansky would not be entitled to relief. Volansky asserts the officer did not have reasonable suspicion to conduct a traffic stop. *See* Appellant's Brief, at 9-12. He asserts Officer Ambs' investigation was based on a hunch and was merely a "fishing expedition." *Id.* at 9, 11, 12. Volansky agrees this was an investigative detention and only reasonable suspicion was required for the stop. *See id.* at 9; *Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa. Super.

2023) ("Generally, a motor vehicle stop is an investigative detention[,]" which "requires reasonable suspicion of unlawful activity.") (citation omitted).

> Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer. In a *Terry*[4] stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. A finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts. Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable.

*Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) (citations and quotation marks omitted).

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate.
>
> The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity.

*Commonwealth v. Thomas*, 273 A.3d 1190, 1196 (Pa. Super. 2022) (citations and brackets omitted).

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

"The reasonable suspicion inquiry falls considerably short of 51% accuracy, for, as we have explained, to be reasonable is not to be perfect." *Jefferson*, 256 A.3d at 1249-1250 (citations and internal quotation marks omitted). "It is well-settled that to justify their decision to stop and briefly detain an individual, the police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability." *Id.* at 1251 (citation and brackets omitted).

Here, Officer Ambs observed the driver of the sedan to be a white, middle-aged, bald man with facial hair. **See** N.T. Suppression Hearing, 5/30/23, at 8-9. While running the vehicle's information through the various databases, he saw that a Boris Volansky had prior contacts with police in the sedan, had a suspended driver's license, and "matched [the driver he observed] to a T." *Id.* He believed the driver to be Boris Volansky and knew that Boris Volansky could not lawfully drive a vehicle due to a suspended driver's license. **See id.** at 8-9, 10, 11, 15, 16-17, 18. These particularized facts gave rise to reasonable suspicion to conduct the traffic stop. **See** *Thomas*, 273 A.3d at 1196 (we must look at the totality of the circumstances at the moment of intrusion, i.e., the traffic stop, to determine reasonable suspicion).

While it is true that Boris Volansky was not driving the sedan, and it is true that Officer Ambs asked Eugene Volansky about "Mark", not Boris, these mistakes were objectively reasonable given that both a "Mark" and a "Boris

- 7 -

Volansky" appeared in the searches Officer Ambs conducted through his various databases, and, unfortunately for Eugne Volansky, the driver remarkably resembled Boris Volansky. **See Jefferson**, 256 A.3d at 1250 ("to be reasonable is not to be perfect.") (citation omitted). Importantly, the trial court found Officer Ambs credible. **See** N.T. Suppression Hearing, 5/30/23, at 33 ("I find that the testimony of Officer Ambs is credible and believable[,] and I accept it in its entirety."). We are bound by the findings of the trial court, as they are supported by the record. **See Bush**, 166 A.3d at 1282 ("Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error."). Based upon the evidence presented at the suppression hearing, there was a fair probability that Boris Volansky was driving the sedan. Although Officer Ambs was incorrect in this fair and reasonable assumption, it was not a "fishing expedition" as Volansky now asserts. Therefore, this claim has no merit.

Judgment of sentence affirmed.

Judge Beck joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2024