J-S39038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEVIN VINCENT VANCLIFF | : | |
| | : | |
| Appellant | : | No. 165 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 3, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003019-2022

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JANUARY 7, 2026**

Kevin Vincent Vancliff ("Vancliff") appeals from judgment of sentence from his convictions for persons not to possess firearms, resisting arrest, fleeing or attempting to elude officer, accident involving damage to attended vehicle, accident involving death or personal injury while not properly licensed, unsafe movement, driving while operator privileges suspended, and failure to report an accident.[1] Because Vancliff failed to establish a reasonable expectation of privacy in the car whose search he challenges, his suppression claim is meritless; because he did not timely assert his sentencing claim, he is due no relief.

On March 4, 2022, Pennsylvania State Police Trooper John Waida ("Trooper Waida"), who was assigned to observe traffic on I-76 West, saw a

_____

[1] *See* 18 Pa.C.S.A. §§ 6105(a)(1), 5104; 75 Pa.C.S.A. §§ 3733(a), 3743(a), 3742.1(a)(1), 3304(a), 1543(a), 3744(b).

gray Mercury Grand Marquis with tinted windows and a temporary Delaware registration drive past him. Trooper Waida ran the car's vehicle registration and determined it was counterfeit. Trooper Waida initiated a traffic stop. Vancliff presented Trooper Waida with false identification. Trooper Waida directed Vancliff to get out of the car; instead of complying, Vancliff took off at a high rate of speed using the shoulder of the highway, left the highway, drove through a red light, and crashed into a van. Vancliff then got out of the car and fled. Trooper Hunter Freeman ("Trooper Freeman") tased Vancliff, apprehending him. Vancliff's injured passenger, who remained in the car, told Trooper Waida a firearm underneath her seat had slid out onto the floorboard. Trooper Waida saw the firearm after he helped her out of the car. Subsequent testing established the presence of Vancliff's DNA on the firearm. The troopers determined Vancliff was a person not to possess a firearm based on a prior disqualifying conviction. *See* Trial Court Opinion, 3/25/25, at 2, 6-7; N.T., 10/3/24, at 12, 18, 38.

In December 2024, at a non-jury trial, the court convicted Vancliff of the above-listed charges. The court sentenced Vancliff to an aggregate term of six to twelve years of imprisonment. Vancliff filed a *nunc pro tunc* motion for reconsideration which the court denied. This timely appeal followed.

On appeal, Vancliff raises the following issues for our review:

1. Whether the trial court erred in finding [Vancliff] lacked standing to challenge the warrantless seizure of the firearm based upon the decision in **Commonwealth v. Hall**, 305 A.3d 1026 (Pa. Super. 2023), as [Vancliff] did not abandon the vehicle that he was driving despite fleeing on foot for a short distance before

being tased by the State Trooper who had pursued him in a high-speed chase . . . ?

2. Whether the trial court erred in denying [Vancliff's] motion to suppress evidence in that the warrantless search of the vehicle was in violation of the Fourth and Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution and that the seizure of the firearm was not executed in accordance with **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020)?

3. Whether the trial court erred in failing to grant [Vancliff's] *nunc pro tunc* motion for reconsideration of sentence . . . seeking reconsideration of the six . . . to twelve . . . year sentence . . . for [Vancliff]?

Vancliff's Brief at 5 (unnecessary capitalization omitted).

In his first issue, Vancliff asserts he did not abandon the car and retained a privacy interest, permitting him to seek the suppression of the firearm found inside. **See** Vancliff's Brief at 22-25.

This Court's standard of review regarding a challenge to a suppression ruling is limited to determining whether the suppression court's findings of fact are supported by the record and the legal conclusions drawn from those facts are correct. **See Commonwealth v. Thomas**, 273 A.3d 1190, 1195 (Pa. Super. 2022). Where the Commonwealth has prevailed below, this Court may only consider the evidence of the prosecution and so much of the defense's evidence as remains uncontradicted when read in the context of the record. **See id**. It is the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to give their testimony. **See id**. When the record supports the suppression court's factual findings,

we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. *See Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).

This Court's scope of review is limited to the evidentiary record at the suppression hearing. *See Commonwealth v. Smith*, 302 A.3d 123, 126 (Pa. Super. 2023). When an appellant asserts legal error in a suppression court's ruling, it is the Court's duty to determine if the suppression court properly applied the law to the facts. *See Commonwealth v. J. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (stating a suppression court's conclusions and legal rulings are subject to *de novo* review).

To defeat a motion to suppress, the Commonwealth must prove by a preponderance of the evidence the challenged evidence was not obtained in violation of the defendant's rights. *See Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012); *see also* Pa.R.Crim.P. 581(H). At a suppression hearing, the Commonwealth bears the initial burden of production to present sufficient evidence the defendant's constitutional rights were not infringed because, for example, he lacked a privacy interest in the searched property; when the Commonwealth does so, "it need do no more, absent proof to the contrary from the accused himself." *Commonwealth v. Moore*, 310 A.3d 802, 807 (Pa. Super. 2024) (quoting *Commonwealth v. Enimpah*, 106 A.3d

695, 701 (Pa. 2014)).[2]  When the Commonwealth makes a preliminary showing a defendant lacked a protective privacy interest, the party seeking suppression is then required to show a privacy interest society is prepared to recognize as reasonable; if he cannot, the challenged police action does not implicate the Federal or State constitutions, and his suppression motion must be denied.  *See Enimpah*, 106 A.3d at 698-99; *Moore*, 310 A.3d at 807.  A reasonable expectation of privacy is only present when an individual has a subjective expectation of privacy **and** that expectation "is one that society is prepared to recognize as reasonable."  *Moore*, 310 A.3d at 807 (quoting *Commonwealth v. Brundidge*, 620 A.2d 1115, 1118 (Pa. 1993)).

The Fourth Amendment protects the right of the people against unreasonable searches and seizures.  *See* U.S. Const. Amend. IV.  The ultimate touchstone of the Fourth Amendment is reasonableness.  *See Riley v. California*, 573 U.S. 373, 381 (2014).  Abandonment is a specific exception to the warrant requirement; a party may not contest the search and seizure of items he voluntarily abandoned.  *See Commonwealth v. R. Byrd*, 987 A.2d 786, 790-93 (Pa. Super. 2009); *Commonwealth v. Clark*, 746 A.2d

---

[2] A defendant has "automatic standing" in Fourth Amendment/Article I, Section 8 cases to litigate a motion to suppress when charged with a possessory offense.  *See Enimpah*, 106 A.3d at 698.  "However, to actually prevail on such a motion, that is, to be entitled to the suppression of evidence upon a finding of police illegality, a defendant must also show he had a reasonable expectation of privacy in the place searched or thing seized." *Commonwealth v. Anderson*, 340 A.3d 297, 307 (Pa. 2025).

1128, 1134 (Pa. Super. 2000). "[A]bandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." *Commonwealth v. Dowds*, 761 A.2d 1125, 1131 (Pa. 2000) (internal citations and footnote omitted). A person who abandons an item relinquishes his reasonable expectation of privacy in it. *See id*. at 1131 n.7; *Hall*, 305 A.3d at 1033 (stating a suspect does not retain a reasonable expectation of privacy in items he has voluntarily abandoned); *see also Abel v. United States*, 362 U.S. 217, 241 (1960) (stating there is nothing unlawful in the government's appropriation of abandoned property); *Commonwealth v. Ibrahim*, 127 A.3d 819, 825 (Pa. Super. 2015) (holding when a person abandons property voluntarily the police may recover it and use it as evidence against him).

To determine whether an abandonment has occurred, this Court considers all relevant circumstance at the time of the alleged abandonment. Further,

> [t]he issue is not abandonment in the strict property-right sense, **but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search**.

*Commonwealth v. Shoatz*, 366 A.2d 1216 (Pa. 1976) (emphasis added).

Vancliff asserts he did not voluntarily abandon the car because he "exited the vehicle after it was involved in [a] serious collision" and "only made

it a short distance from the vehicle before being tased by Trooper Freeman."

Vancliff's Brief at 24.

The trial court disagreed. It stated:

> [W]hen Trooper Waida requested that [Vancliff] step out of his vehicle, [Vancliff] fled in his vehicle at a high rate of speed. While the troopers were in pursuit, [Vancliff] drove along the shoulder of [I-76W] in heavy traffic. The vehicle exited at the Belmont Avenue exit, [and Vancliff] drove through a red light and crashed into a van. After the crash, [Vancliff] fled on foot, and left the passenger immobile on the floorboard of the vehicle in extreme pain. From these facts, which are supported by the testimony at the hearing, [Vancliff's] intent was to abandon the vehicle. He was trying to escape apprehension by police, and tried to do so by any means necessary. [H]e tried to flee in his vehicle, in complete disregard to the dangerous conditions, he drove on the shoulder of the heavily trafficked roadway, exited that roadway, ran through a red light, and crashed into another vehicle. When he could no longer get away in the vehicle, he fled on foot. At this point, [Vancliff] relinquished his property interest in the vehicle because he abandoned the vehicle in his attempt to allude police. This is also evidenced by the fact that his passenger was obviously injured, but [Vancliff] fled regardless.

Trial Court Opinion, 3/25/25, at 9-10 (record citations omitted).

The record supports the suppression court's conclusion that Vancliff abandoned the car following the collision and thus failed to establish a reasonable expectation of privacy in it. Vancliff sped off on the highway, in heavy traffic, after being ordered to get out of the car. **See** N.T., 7/22/24, at 11. Vancliff then crashed into a van, got out, and fled on foot.[3] **See id**. at

---

[3] Although Vancliff characterizes his flight as "short," he neglects to address the fact his flight was terminated by being tased, rather than a product of his surrender to law enforcement authorities. **See** N.T., 7/22/24, at 11. *(Footnote Continued Next Page)*

12. Vancliff therefore abandoned the vehicle and relinquished his reasonable expectation of privacy. *See Hall*, 305 A.3d at 1033-34 (affirming suppression court's finding Hall relinquished reasonable expectation of privacy where he fled from a car after an accident leaving an injured passenger inside).[4] Accordingly, Vancliff abandoned his right to challenge the search of the car and anything found inside it. Because Vancliff failed to establish a reasonable expectation of privacy in the car, its search did not affect his rights and we do not consider his second claim. *See Commonwealth v. Millner*, 888 A.2d 680, 692 (Pa. 2005) (stating "a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests.").

Vancliff's final issue asserts the trial court erred in failing to grant his *nunc pro tunc* motion for reconsideration of sentence. Pursuant to

_____

Moreover, Vancliff's assertion he did not intend to abandon the vehicle because it is normal for individuals involved in an accident to get out of their cars does not establish that he preserved a reasonable expectation of privacy society is prepared to recognize as reasonable by fleeing from the police, crashing, and then getting out of the car, fleeing on foot, and leaving an injured passenger behind.

[4] Vancliff's attempts to distinguish *Hall* because the driver in that case was not present and "had never been pulled over by law enforcement prior to the accident." Vancliff's Brief at 25. Vancliff misstates the facts of *Hall*—the driver in that case *had* also been stopped by law enforcement before fleeing and getting into an accident. *See Hall*, 305 A.3d at 1030. Moreover, in *Hall* and the present case, the driver fled after an accident, which constitutes abandonment of a subjective expectation of privacy and/or one society is prepared to recognize as reasonable.

Pa.R.Crim.P. 720(A)(1), "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). Vancliff was sentenced on December 3, 2024. He filed an untimely post-sentence motion on December 16, 2024, and titled it "*Nunc Pro Tunc* Motion for Reconsideration of Sentence." Vancliff, however, could not file a post-sentence motion *nunc pro tunc* without the express permission of the trial court. **See Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015). Here, the record does not indicate Vancliff sought, or the court granted, express permission to file the post-sentence motion *nunc pro tunc*; thus, Vancliff filed an untimely post-sentence motion. Accordingly, Vancliff has failed to preserve his discretionary aspects of sentencing claim, and we lack the jurisdiction to review it. **See**, **e.g.**, **Commonwealth v. Rivera**, 312 A.3d 366, 376 (Pa. Super. 2024) (requiring appellant to preserve discretionary aspects of sentencing issue by raising it at the time of sentencing or in a post-sentence motion).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/7/2026