2023 PA Super 148

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILFREDO T. SMITH | : | |
| | : | |
| Appellant | : | No. 1278 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 13, 2022
In the Court of Common Pleas of Fayette County
Criminal Division at No(s):  CP-26-CR-0001516-2021

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

OPINION BY PANELLA, P.J.:                    **FILED: AUGUST 7, 2023**

Wilfredo Smith appeals from the judgment of sentence imposed by the Fayette County Court of Common Pleas after a jury found him guilty of possession of a controlled substance and possession with intent to manufacture or deliver ("PWID"), 35 P.S. §780.113(a)(16)&(30). Smith argues on appeal that the warrantless search of his residence while he was on parole was illegal and the suppression court therefore erred by refusing to suppress the contraband found and statements made as a result of that search. He also argues the trial court erred by finding he was not eligible for the Recidivism Risk Reduction Incentive ("RRRI") program when sentencing

---

[*] Retired Senior Judge assigned to the Superior Court.

him. As we find neither of these issues have merit, we affirm the judgment of sentence.

The facts underlying this appeal are largely undisputed. Smith was released on parole in December 2019 from a judgment of sentence for PWID. At the time of his release, Smith signed a PBPP-11 Form listing the conditions of his release from incarceration. Those conditions included the right of parole officers to perform warrantless searches of Smith's residence. The conditions also prohibited Smith from possessing alcohol or possessing or selling controlled substances.

After learning information which indicated Smith was selling drugs out of his residence, Smith's supervising parole agent, Parole Agent Trent Sellers, conducted a warrantless search of Smith's residence on June 11, 2021. At that time, Smith tested positive for marijuana and Agent Sellers observed beer in the kitchen in plain view. Agent Sellers then had a canine from the parole K-9 unit search the house and the canine alerted positive for drugs in Smith's bedroom and several other locations. Parole Agent Justin DePalma, who had accompanied Agent Sellers to the search, searched a box in the bedroom which had produced a positive alert from the canine. He discovered a large bundle of U.S. currency and baggies of white and tan powder suspected to be narcotics in the box.

Based on what Agent DePalma found, Agent Sellers contacted Detective Alexis Metros of the Fayette County Bureau of Investigation. The detective

- 2 -

went to Smith's residence, and after seeing the suspected contraband found by Agent DePalma, she filed for, and then received, a warrant to search Smith's residence.

Detective Metros read Smith his *Miranda* rights, and also had him sign a written form waiving those rights. Smith admitted that the drugs found in the residence belonged to him and further admitted he was selling the drugs. During the search pursuant to the search warrant, a large baggie containing several smaller baggies of suspected cocaine was discovered in a backpack in Smith's bedroom.

Smith was charged with two counts of possession of a controlled substance and two counts of PWID. He filed a motion to suppress, essentially arguing that there was no legal basis for the parole agents to conduct a search of his residence before Detective Metros secured the search warrant. The court held a hearing on the motion on December 3, 2021.

Agent Sellers testified first at the hearing. He confirmed Smith had signed a PBPP-11 Form, in which Smith expressly consented to a search of his person, property and residence without a warrant by parole officers. *See* N.T. Suppression Hearing, 12/3/2021, at 8. The Form also notified Smith that he could not possess alcohol, or possess or sell controlled substances. *See id.* at 7-8. Agent Sellers reported Smith had failed a drug screening in May 2021, when he testified positive for cocaine and marijuana. *See id.* at 9

Agent Sellers stated he became concerned that Smith was selling drugs from his residence in violation of his parole conditions. *See id.* at 11. According to Agent Sellers, this concern stemmed from the fact that Smith had tested positive for marijuana and cocaine, that Smith's GPS bracelet showed Smith routinely traveling to known high drug-trafficking areas as well as from the tips law enforcement had received from members of the community that there was a large number of vehicles coming and going from Smith's residence. *See id.* at 10-11.

Based on these circumstances, Agent Sellers sought and received approval from his supervisor to conduct an approved search of Smith's house. *See id.* at 11. On cross-examination, Agent Sellers reiterated the factors that created "the existence of reasonable suspicion" that Smith was violating the conditions of his parole and prompted the warrantless search of Smith's house. *See id.* at 24-25.

Detective Metros also testified. She stated she was contacted by Agent Sellers on the day of the search because of the suspected narcotics found in Smith's residence. Detective Metros recounted that she went to Smith's residence, viewed the baggies uncovered in the box in the bedroom and, based on her experience, also suspected the baggies contained narcotics. *See id.* at 43-44. The detective stated she obtained a warrant to search the house, and pursuant to that search, officers found a backpack containing 162 grams of cocaine. *See id.* at 45, 47.

Following the hearing, the court directed the parties to submit "legal authority" in support of their positions by December 17, 2022. Smith filed a memorandum of law, primarily arguing that the parole agents did not have the statutorily-required reasonable suspicion to conduct the warrantless search of his house. The suppression court denied Smith's motion to suppress in an order entered on January 27, 2022, and filed an accompanying opinion in support of that order.

Smith proceeded to a jury trial before a different trial judge than the judge who had ruled on Smith's suppression motion. The jury found Smith guilty of one count of possession of a controlled substance and one count of PWID; the trial court sentenced him to 72 to 144 months' incarceration. The trial court specifically found that Smith was not eligible for the RRRI program because of a previous terroristic threats conviction but stated that the Department of Corrections could, within its discretion, place Smith in the program. Smith filed a post-sentence motion, which the court denied.

Smith then filed a notice of appeal. He complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal, claiming that the suppression court erred by denying his suppression motion and the trial court erred in failing to deem him eligible for the RRRI program. In its responsive Rule 1925(a) opinion, the trial court noted that, as for the first issue, the suppression court had filed its own Statement in Lieu of Opinion, relying on its opinion issued on January 27, 2022 to support its

reasons for the denial of the suppression motion.[1] The trial court also found it had not erred by finding Smith ineligible for the RRRI program. Smith now raises these two issues on appeal:

> 1. Whether the Honorable President Judge Wagner, Jr. erred in denying [Smith's] Post-Sentence Motion requesting his sentencing order be amended to recommend [his] eligibility for participation in the [RRRI Program] found at 61 P. C.S.A. § 4501 *et seq*.
>
> 2. Whether the Honorable Judge Linda Cordaro erred factually and legally in denying [Smith's] Omnibus Pretrial Motion on January 27, 2022 in that the Commonwealth failed to sustain its burden of proof by a preponderance of the evidence that the initial search performed by the parole agents and the subsequent search conducted after [Detective] Metros obtained a search warrant was unconstitutional, illegal and unlawful thereby warranting suppression of all of the inculpatory evidence seized therefrom.

Appellant's Brief at 4 (Answers omitted).

We first address Smith's challenge to the denial of his suppression motion. When this Court reviews a trial court's denial of a suppression motion, we are limited to reviewing only the evidence presented at the suppression hearing. **See Commonwealth v. Carey,** 249 A.3d 1217, 1223 (Pa. Super.

---

[1] We note that while Smith attached the Statement in Lieu of Opinion to his brief, he did not attach the January 27, 2022 opinion upon which the suppression court relied to his brief as required by Pa.R.A.P. 2111 (b) (providing there "shall be appended to the brief a copy of any opinions delivered by any trial court … relating to the order or other determination under review, if pertinent to the questions involved."). Although the January 27, 2022 opinion is in the certified record, we remind counsel of their obligation to comply with the Rules of Appellate Procedure.

2021). We look to see whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. ***See id***. While we are bound by the suppression court's factual findings if those findings are supported by the record, we are not bound by the suppression court's legal conclusions. ***See id***. To the contrary, it is our duty to determine if the suppression court properly applied the law to the facts. ***See id***.

Here, in denying Smith's motion to suppress, the suppression court first pointed out that Smith specifically consented to a warrantless search of his residence by parole officers when he signed the PBPP-11 Form. The court then noted that 42 Pa. C.S.A. § 9912(d) enumerates the grounds for a valid search of a parolee's property. To that end, Section 9912(d) provides that a search of a parolee's property may be conducted by an officer if there is reasonable suspicion to believe the real property contains contraband or other evidence of violations of the conditions of supervision. ***See id.***

Section 9912(d)(6) then lists the factors to be taken into account when determining whether such reasonable suspicion exists. Those factors include: the observations of officers, information provided by others, the activities of the parolee, the experience of the officers with the parolee, and the prior criminal and supervisory history of the parolee. ***See*** 42 Pa. C.S.A. § 9912(d)(6).

In finding that Agent Sellers had reasonable suspicion here, the suppression court noted that Smith had failed a drug test the month prior to the search, Smith's GPS bracelet showed him regularly visiting known high drug-trafficking areas and that there had been community reports of possible drug transactions at Smith's residence. The court concluded that "[b]ased on the facts available to Agent Sellers, as well as his own experience, and Smith's prior criminal history, there was at least reasonable suspicion to support a search of [his] property." Trial Court Opinion, 1/27/2022, at 4.

The suppression court also noted that Agent Sellers had obtained the prior approval of his supervisor, as mandated by 42 Pa. C.S.A. § 9912(d)(3) (providing that "[p]rior approval of a supervisor shall be obtained for a property search absent exigent circumstances").

We see no error with the suppression court's conclusion that Agent Sellers had reasonable suspicion to search Smith's residence, and that therefore, both the initial search, as well as the subsequent search pursuant to the search warrant obtained using evidence of the contraband found during the initial search, were lawful.

Smith does not focus on disputing the existence of reasonable suspicion for the initial search in his appellate brief. Instead, he argues for the first time that the "stalking horse doctrine" warrants suppression of all the evidence obtained from the searches of his residence. He specifically claims three times that Agent Sellers and the other parole officers had "'switched hats,' 'ceased

acting as an administrator of the parole system,' and were instead 'acting as [ ] police officers, involving [Detective Metros and other police officers] in a coordinated plan to ensnare [Smith] in a drug trafficking crime without a scintilla of probable cause or reasonable suspicion." Appellant's Brief at 7, 13, 21.

In the first instance, Smith did not present this argument in either his motion to suppress or his memorandum of law in support of his suppression motion. In fact, Smith's memorandum of law did not mention the "stalking horse doctrine" or even cite to the case he now extensively relies upon in support of that argument in his appellate brief. Moreover, this argument was not delineated in Smith's Rule 1925(b) statement. As such, neither the suppression court nor the trial court ever addressed this argument. Smith's argument invoking the "stalking horse doctrine" is therefore waived. **See** Pa.R.A.P. 302(a); **Commonwealth v. Jefferson**, 256 A.3d 1242, 1252 (Pa. Super. 2021) (providing that new and different theories of relief to support the suppression of evidence may not be raised for the first time on appeal); **Commonwealth v. Thur,** 906 A.2d 552, 566 (Pa. Super. 2006) (providing that when a defendant "raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression"); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)

(holding that issues that are not sufficiently raised in the Rule 1925(b) statement are waived).

In any event, we find no merit to the argument in support of the "stalking horse doctrine" nor do we find any factual basis for it in the certified record. Based on all of the above, Smith has failed to convince us that his claim that the suppression court erred by denying his motion to suppress warrants any relief.

In his other claim, Smith contends the trial court erred by failing to deem him to be an "eligible person" for the RRRI Program. This claim also fails. 61 Pa.C.S.A. § 4503 defines who is an "eligible person" for purposes of the RRRI Program. It specifies that an "eligible person" is:

> A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who meets all of the following eligibility requirements:
>
> (1) Does not demonstrate a history of present or past violent behavior.
>
>  …
>
> (3) Has not been found guilty of or previously convicted of or adjudicated delinquent for … a personal injury crime as defined under section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the Crime Victims Act[.]

61 Pa.C.S.A. § 4503 (footnote omitted). The Crime Victims Act, in turn, defines personal injury crimes to include "[a]n act, attempt, solicitation or conspiracy to commit an act" under Chapter 27 of the Crimes Code. **See** 18 P.S. § 11.103.

Applying those definitions here, the trial court stated:

Smith was previously found guilty of Terroristic Threats, 18 Pa. C.S.[A.] § 2706 in Case No. 1588 of 2002 which makes him ineligible for participation in the RRRI Program. As he had been convicted of a crime under Chapter 27 of the Pennsylvania Crimes Code, he is ineligible for participation in the program.

Trial Court Opinion, 11/21/2022, at 3-4 (unpaginated).

Smith does not dispute he was previously convicted of terroristic threats or that the offense of terroristic threats is a personal injury crime under the Crime Victims Act disqualifying him from eligibility. Instead, Smith argues his single previous conviction for terroristic threats does not establish a "history of present or past violent behavior." He maintains that his "criminal history, which reflects several previous convictions, only one of which demonstrates violent behavior, does not render him ineligible for a sentence under the RRRI Act" because a single prior conviction demonstrating violent behavior does not amount to having a pattern or history of such behavior. Appellant's Brief at 12.

Smith's argument fails, most notably because it fails to take into account the explicit language of Section 4503's definition of "eligible person." As noted above, in order to be eligible for the RRRI program, an individual must meet all of the eligibility requirements listed. Those requirements include being an individual who has not demonstrated a history of violent behavior. However, in addition, the eligibility requirements also include being an individual who has not been previously convicted of any of the disqualifying offenses

enumerated in Section 4503. Here, Smith was convicted of terroristic threats, a crime under Chapter 27, which is one of the disqualifying offenses. As such, under the explicit definition of "eligible person," Smith was ineligible for the program, irrespective of whether or not he has demonstrated a history of violent behavior. *See Commonwealth v. Cullen-Doyle*, 164 A.3d 1239, 1243 (Pa. 2017) (stating that Section 4503 prescribes that individuals who have been convicted of certain enumerated offenses, such as the use of a deadly weapon, personal injury crimes as set forth in the Crimes Victims Act, and crimes requiring registration as a sex offender, are ineligible for participation in the RRRI program).

Accordingly, like his first claim, Smith's claim that the trial court erred by finding him ineligible for the RRRI program does not offer him any basis for relief.

Judgment of Sentence Affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2023