J-S22041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BOBBIE MITCHELL, JR. | : | |
| | : | |
| Appellant | : | No. 1242 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 26, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004404-2018

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED DECEMBER 22, 2023**

Bobbie Mitchell, Jr. ("Mitchell") appeals *nunc pro tunc* from the judgments of sentence imposed following his convictions of first-degree murder, persons not to possess firearms, and possessing an instrument of crime (firearm).[1] After careful review, we affirm Mitchell's convictions, vacate the judgment of sentence for possessing an instrument of crime, and remand for the limited purpose of allowing the trial court to correct its self-recognized error at sentencing.

The trial court summarized the factual history of the case as follows:

On the [morning] of April 1, 2018, the Pottstown police received notification of a possible shooting victim and information that someone was seen leaving the scene on foot. In the early morning hours of April 1, 2018 . . ., Siani Overby ["the victim"] was found lying in a pool of blood . . ., clearly deceased.

---

[1] ***See*** 18 Pa.C.S.A. §§ 2502(a), 6105, 907(b).

Witnesses saw an African American man fleeing the scene after screaming alerted the witnesses that something was wrong.

Police at the scene of the crime recovered a cell phone that was lying between the victim's legs.[2] This cell phone was a black Alcatel phone ["the Alcatel phone"], with the phone number ending in 8227. It was assumed by police that the phone located between the victim's legs belonged to the victim. A download of the phone revealed this assumption to be incorrect, and police were able to determine that the phone belonged to [Mitchell]. [Mitchell] and the victim had previously been in an intimate relationship and it was once believed that they shared a child. Based upon the testimony of [Mitchell], a DNA test was performed a year and a half before the victim's death, and it was determined that [Mitchell] was not the child's father.

In the hours after the murder, [Mitchell] called his girlfriend Deniqua Butler to let her know that he would be coming to her home in Norristown and that they would be traveling to Connecticut that morning to visit [Mitchell]'s father. [Mitchell] arrived at the home of Ms. Butler in the very early morning hours wearing a white t-shirt under a dark jacket with dark jeans. [Mitchell], Ms. Butler and their children left for Connecticut around 4 a.m. in Ms. Butler's Chevy Malibu.

The police initiated a search for [Mitchell] after it was discovered that he was no longer in Pottstown and that his kids were unexpectedly not in school. Out of concern for the safety of [Mitchell]'s children and Ms. Butler, the police performed an emergency ping on Ms. Butler's phone. As a result of the ping, the police discovered Ms. Butler and [Mitchell] in Waterbury, Connecticut.

An arrest warrant was issued in Montgomery County, and pursuant to that warrant, police in Waterbury, Connecticut arrested [Mitchell]. Search warrants for both the apartment where [Mitchell] was staying and . . . the Chevy Malibu ["the Malibu"] were obtained and executed. Detective Todd Richard of

---

[2] The police found the victim's body lying face-up in an alley. **See** N.T., 9/23/19, at 34-38, 165.

the Montgomery County Detective Bureau and Detective Heather Long of the Pottstown Police Department performed an interview of [Mitchell] upon his arrest.

Trial Court Opinion, 8/3/21, at 2-3 (record citations omitted).

Police charged Mitchell with murder, persons not to possess firearms, and possessing an instrument of crime. Thereafter, Mitchell sought to suppress several items of evidence pre-trial, including, in relevant part, the Alcatel phone found between the victim's legs at the murder scene, and the fruits of that search, an audio recording of the homicide, and the evidence seized from the Chevy Malibu Mitchell drove to Waterbury, Connecticut, hours after the murder. *See* Mitchell's Motion to Suppress and Motion to Exclude Audio Evidence, 1/9/19; Mitchell's Motion *in Limine* 1/9/19, Mitchell's Motion to Suppress, 3/29/19. The Commonwealth sought the admission of the cell phone, the audio recording of the homicide, evidence recovered from the Malibu, statements the victim made to her brother concerning Mitchell's gun and drug involvement, and Mitchell's history of violence against the victim. *See* Commonwealth's motions *in limine*, 1/9/19.

On August 29, 2019, the court conducted a hearing on all of Mitchell's and the Commonwealth's motions. After the hearing, the court denied Mitchell's motion to suppress the results of the search of the Alcatel phone, the "fruits" of that search, and the audio recording of the homicide. In so doing, the court credited the testimony of Montgomery County Detective Todd

Richard ("Detective Richard") that the detectives at the murder scene believed the Alcatel phone found between the legs of the victim lying in an alley was hers because it was found in close proximity to her body in a public area. The trial court also credited Detective Richard's testimony that when the police discovered the phone did not belong to the victim, the search was suspended and the police applied for and obtained a search warrant. *See* Order 9/6/19, at 1-2. The court found the Alcatel phone was abandoned because it was left lying on the victim's body of the ground at the scene of the killing, and Mitchell had no reasonable expectation of privacy in the phone. *See id*. at 2, 4.[3]

The Commonwealth argued the audio testimony, which contained sounds of pleading, gunshots, and someone screaming after the gunshots, was evidence of the shooter's specific intent to kill. *See* N.T., 8/29/19, at 94-97. The court denied Mitchell's motion to suppress the audio testimony. *See id*. at 97; Order sur [Mitchell's] motion to exclude audio evidence, 9/6/19.

Mitchell asserted that the $117,000 found in the search of the Malibu was the fruit of the poisonous tree of the illegal search of the victim's cell phone and probable cause did not exist for issuance of the search warrant. *See id*. at 26, 91. The court found that the search warrant for the Malibu was

---

[3] The court also stated that a finding of abandonment of the cell phone was supported because Mitchell had driven to Connecticut leaving the phone behind and told another person not to contact the Alcatel phone. *See* Order 9/6/19, at 3-4.

- 4 -

issued upon probable cause because a warrant had been issued for Mitchell's arrest, Mitchell was seen getting into the Malibu, and the Malibu was registered to a known associate of his. *See* Order sur [Mitchell's] motion to suppress the evidence obtained through the April 2, 2019 warrant for the 2015 Chevy Malibu, 9/6/19, at 1-2.

The court found that the victim's statement to her brother, Carlton Overby ("Overby"), regarding Mitchell's involvement with guns and drugs was admissible evidence of Mitchell's state of mind pursuant to Pa.R.E. 803(3); it also found that the Commonwealth's proffer of the victim's mother's testimony established the existence of admissible evidence of Mitchell's prior threats and violence against the victim. *See* N.T., 9/23/19, at 100-03; Order sur the Commonwealth's motion in *limine* for the admission of victim's statements regarding [Mitchell] pursuant to state of mind hearsay exception, 9/6/19; Order sur the Commonwealth's motion in *limine* for the admission of evidence of [Mitchell's] prior bad acts under Pa.R.E. 404(b), 9/6/19.

In addition to the evidence discussed above, at trial the evidence also included the victim's brother Overby's testimony that Mitchell threatened to kill the victim if she revealed his drug-related activities, *see* N.T. 9/23/19, 48; evidence a witness heard a woman scream, "Please don't do it," after the first shot, *see id*. at 63-64; evidence a man dressed in dark clothes fled the scene

of the killing, *see id*. at 41-43;[4] Linwood Brown's testimony that Mitchell, his brother, called him crying on the morning of the killing and directed him to tell their friend, John Sutton ("Sutton"), not to call him on the Alcatel phone, *see id*. at 117, 127-31, 165, 167, 192; cell phone tower evidence the Alcatel phone found at the murder scene had been at Mitchell's girlfriend's house with Mitchell's other cell phones less than one hour before the killing, and then went to the area of the murder, *see* N.T., 9/25/19, at 62-64, 93-95; evidence that moments after the murder, Mitchell called his girlfriend and his son from the scene of the murder and told them to pack up for a trip, and they left for Connecticut at 4:00 a.m., *see* N.T. 9/24/19, 112, 121, 151-53, 157-58, 166-67, 181, 207; N.T., 9/25/19, at 81; evidence Mitchell activated a new cell phone shortly after the murder and had nearly a one-hour phone call with his brother, *see id*. at 192-96 and evidence all three cell phones Mitchell used to communicate with his girlfriend and family immediately after the murder were found with him in Connecticut, *see id*. at 214. Additionally, a series of angry text exchanges between the victim and Mitchell was admitted, from a phone later found in Mitchell's possession, close in time to the actual shooting and the 911 call, *see id*. at 8-16, 69-78.

After a four-day trial, the jury convicted Mitchell of all above-listed

---

[4] The man's flight immediately after the shooting was also captured on home video surveillance. *See* N.T., 9/24/19, 13.

offenses. The trial court imposed a term of life imprisonment for murder, and erroneously imposed two sentences for one count of possessing an instrument of crime and failed to state a sentence for the charge of persons not to possess firearms, *See* N.T., 9/26/19, at 100-01.[5]

Mitchell did not file post-sentence motions. He filed a timely notice of appeal but counsel failed to file an appellate brief, resulting in the dismissal of the appeal in March 2021. The trial court later granted Mitchell's right to a direct appeal *nunc pro tunc* in the interests of justice. *See* Order 8/3/21, at 2. Both Mitchell and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mitchell raises the following issues for our review:

[1.] Did the trial court err in denying [Mitchell]'s motion to suppress . . . a[] cell phone and the data stored therein . . . because the Commonwealth failed to provide probable cause to search the phone without a warrant[?]

[2.] Did the trial court err in its determination that the . . . cell phone was abandoned by [Mitchell] at the scene of the crime, and thus concluding that [Mitchell] had no expectation of privacy in the data stored in the device[?]

[3.] Did the trial court err in . . . admitting into evidence data and information obtained from the . . . cell phone, which was obtained pursuant to a search warrant, secured after the phone had been initially searched, as any such evidence was "fruit of the poisonous tree[?]"

[4.] Did the trial court err in granting the Commonwealth's motion *in limine* allowing the admission into evidence of the

---

[5] The court concedes it erred in doing so. *See* Trial Court Opinion, 8/3/21, at 7. The sentencing order does not appear in the certified record.

alleged victim's statements regarding [Mitchell], pursuant to Pa.R.E. 803(3)[?]

[5.] Did the trial court err in denying [Mitchell]'s pre-trial motion to exclude audio evidence of the homicide[?]

[6.] Did the trial court err in granting the Commonwealth's motion *in limine* to admit prior bad acts evidence in the form of alleged threats and abuse inflicted upon or towards the alleged victim by [Mitchell][?]

[7.] Did the trial court err in sentencing [Mitchell] to . . . five [to] . . . ten . . . years on Count 4, charging Mitchell with a misdemeanor of the first degree . . . [?]

[8.] Did the trial court err in denying [Mitchell's] motion to suppress evidence seized from the 2015 Chevrolet Malibu because there was insufficient probable cause articulated in the search warrant to substantiate the issuance of the warrant and the authorization to search[?[6]]

Mitchell's Brief at vii-viii (issues reordered; full capitalization omitted).[7]

Mitchell's first three issues concerning his motion to suppress information from the Alcatel phone and the fruits of that alleged illegal search. As these issues present similar questions of law and arise from related facts, we analyze them together.

Our standard of review regarding a challenge to a trial court's suppression ruling is limited to determining whether the court's findings of

---

[6] Mitchell states in his brief that he is not proceeding upon his eighth issue and is withdrawing it from consideration on appeal. ***See*** Mitchell's Brief at viii, 25. Accordingly, we do not address it.

[7] For reasons of judicial efficiency and clarity, we have reordered Mitchell's arguments.

fact are supported by the record and the legal conclusions drawn from those facts are correct. **See Commonwealth v. Thomas**, 273 A.3d 1190, 1195 (Pa. Super. 2022). Where the Commonwealth has prevailed below, this Court may only consider the evidence of the prosecution and so much of the defense evidence as remains uncontradicted when read in the context of the record. **See id**. It is the suppression court's sole province as fact-finder to pass on the credibility of witnesses and the weight to give their testimony. **See id**. When the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. **See Commonwealth v. Williams**, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).

Our scope of review is limited to the evidentiary record at the suppression hearing. **See Commonwealth v. Smith**, 302 A.3d 123, 126 (Pa. Super. 2023). When an appellant asserts legal error in a suppression court's ruling, it is the Court's duty to determine if the suppression court properly applied the law to the facts. **See id**. at 7. **See Commonwealth v. James Byrd**, 235 A.3d 311, 319 (Pa. 2020) (stating that a suppression court's conclusions and legal rulings are subject to *de novo* review).

The Fourth Amendment protects the right of the people against unreasonable searches and seizures. **See** U.S. Constit., amend. IV. The ultimate touchstone of the Fourth Amendment is reasonableness. **See Riley**

***v. California***, 573 U.S. 373, 382 (2014) ("***Riley/Wurie***"). Reasonableness generally requires law enforcement officials to obtain search warrants in seeking to discover evidence of wrongdoing. ***See id***. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." ***Id***. (citation omitted).

One of the exceptions to the warrant requirement is abandonment; abandonment can occur quickly and deprives a party of the right to contest the search and seizure of abandoned items. ***See Commonwealth v. Ronald Byrd***, 987 A.2d 786, 790-93 (Pa. Super. 2009); ***Commonwealth v. Clark***, 746 A.2d 1128, 1134 (Pa. Super. 2000). A defendant cannot establish a legitimate expectation of privacy when he has "meaningfully abdicated his control, ownership or possessory interest. . . . [A]bandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." ***Commonwealth v. Dowds***, 761 A.2d 1125, 1131 (Pa. 2000) (internal citations and footnote omitted). The test for abandonment focuses upon "whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his

interest in the property in question so that he could no longer retain a reasonable expectation of privacy." ***Id***. at 1131 n.7.[8]

There can be nothing unlawful in the government's appropriation of abandoned property. ***See Abel v. U.S.****,* 362 U.S. 217, 241 (1960); ***Commonwealth v. Hall***, --- A.3d ---, ---, 2023 WL 7266701 at *5 (Pa. Super., filed November 3, 2023), citing ***Ronald Byrd***, 987 A.2d at 790-93 (stating that a suspect does not retain a reasonable expectation of privacy in items he has voluntarily abandoned); ***Commonwealth v. Ibrahim***, 127 A.3d 819, 825 (Pa. Super. 2015) (holding when a person abandons property voluntarily the police may recover it and use it as evidence against him).

Mitchell initially asserts that the court erred in finding he abandoned the Alcatel phone he argues he unintentionally dropped. He claims the court erred in denying suppression of the phone and its data because he did not abandon it and the police lacked probable cause to search it without a warrant. Because he retained a reasonable expectation of privacy in the Alcatel phone, Mitchell

---

[8] ***See also Commonwealth v. Shoatz***, 366 A.2d 1216, 1220 (Pa. 1976) (emphasis added) (explaining the definition of abandonment for Fourth Amendment purposes differs from the strict property-right sense; the abandonment analysis turns not on a property interest in the item but an appellant's possession of a reasonable expectation of privacy in the property in question ***at the time of the search***).

asserts, the court should have suppressed the data and information from the phone as the fruit of the poisonous tree.[9]

At the suppression hearing, Detective Richard testified he learned the Alcatel phone had been found between the victim's legs and went to the scene with Detective Edward Schikel ("Detective Schikel") to recover and download the contents of the phone, believed to be the victim's. *See* N.T., 8/26/19, at 64-65, 70. When the detectives left the scene with the phone, the police had not yet determined the victim's identity. *See id*. at 69, 72. The detectives took the phone to the Pottstown Police Department where an officer downloaded its contents. Detective Richard looked at the last few contacts obtained from the cell phone download, which included a person identified as "J.J."[10] Detective Richard testified when he realized the Alcatel phone was

_____

[9] The fruit of the poisonous tree doctrine generally requires the exclusion of evidence obtained from, or acquired as the consequence of, an illegal search. *See Utah v. Strieff*, 579 U.S. 232, 237 (2016); *Commonwealth v. Gatlos*, 76 A.3d 44, 63 (Pa. Super. 2013). Evidence uncovered as the result of a legal search is not the fruit of the poisonous tree and will not be suppressed. *Gatlos*, 76 A.3d at 63.

[10] Detective Richard reached out to "J.J.," whose name was John Sutton ("Sutton"), who said he received a text before 5:00 a.m. on the morning of the killing from Mitchell's brother, Brown, telling him not to call the Alcatel phone. *See* N.T., 8/26/19, at 65-66, 72, 78-79, 113 (discussing the contents of Commonwealth's Exhibit 11).

likely connected to a suspect, he stopped looking at it and obtained a search warrant to examine its contents. *See id*. at 66-68.

The court found that the Commonwealth presented evidence at the suppression hearing the Alcatel phone had been abandoned and Mitchell failed to demonstrate a legitimate expectation of privacy in the phone that the police conduct violated. *See* Trial Court Opinion, 8/3/21, at 8-10. We agree.

Detective Richard's testimony, which the court credited, showed the police found the phone in a public alley on a city street between the victim's legs. The court also credited Detective Richard's testimony that the officers on scene believed the phone belonged to the victim, and that at the time the phone was recovered the victim's identity had yet to be determined. Mitchell offered no testimony at the suppression hearing to show he attempted to assert possession of the Alcatel phone when the first police officers arrived at the murder scene, when the detectives arrived, or when the detectives took the phone from the scene and downloaded its contents. In fact, as the court found, Mitchell's actions supported the Commonwealth's evidence of abandonment, including his: 1) call to his brother instructing him to tell Sutton not to call that phone, 2) shutting down that phone, and 3) setting up a new phone within hours of the murder. *See* Order sur [Mitchell's] motion to suppress warrantless search of the Alcatel phone and the search warrant obtained for the Alcatel phone, 9/6/19, at 3-4. Under these facts, we conclude

the trial court properly found the Alcatel phone abandoned. *See Abel*, 362 U.S. at 241; *Hall*, --- A.3d ---, 2023 WL 7266701 at *5 (affirming a suppression court's finding that a suspect voluntarily abandoned a cell phone he left in his car when he fled the scene of a collision); *Ronald Byrd*, 987 A.2d at 791-93 (finding a suspect abandoned a gun he threw under an SUV parked on a public street when he saw a police officer, whose mere presence did not force the abandonment); *Clark*, 746 A.2d at 1143 (finding the decision to hide drugs in a public area demonstrates abandonment of any reasonable expectation of privacy in them).

As support, Mitchell asserts *Commonwealth v. Santiago*, 209 A.3d 912 (Pa. 2019), and *Commonwealth v. Fulton*, 179 A.3d 475 (Pa. 2018), recognize that cell phones are the repositories of strong expectations of privacy and compel a finding the Alcatel phone was not abandoned and he had a reasonable expectation of privacy in it. *See* Mitchell's Brief at 15-17. While we do not disagree that *Santiago* and *Fulton* stand for the principal that there are privacy expectations in cell phones, these cases are distinguishable from this matter. Critically, neither of those cases involves an *abandoned* phone. *Santiago* involved an improper search incident to arrest by a police officer during an interaction that resulted in Santiago's phone falling out of his car. The Commonwealth conceded on appeal that Santiago had *not* abandoned his phone and the search of a phone incident to arrest without a

warrant was illegal. *See Santiago*, 210 A.3d at 188 n.2. Similarly in *Fulton*, the police seized Fulton's cell phone incident to arrest and searched it without a warrant or an applicable exception to the search warrant requirement. *See Fulton*, 179 A.3d at 316.

As this Court has explained, both *Riley*/*Wurie* and *Fulton* address warrantless searches of cell phones seized incident to arrest. *See Commonwealth v. Kane*, 210 A.3d 324, 332 (Pa. Super. 2019). In *Kane*, this Court expressly rejected the argument that *Fulton* applies to warrantless searches of *abandoned* cell phones:

> [W]e decline to conclude that *Fulton* stands for the overbroad and sweeping proposition that police must get a warrant to search a cell phone, even if it has been *abandoned*, when the facts of the case and our case law pertaining to abandoned property do not support that proposition.

*Kane*, *id*. (emphasis in original). The *Kane* court also noted that the holdings in *Riley*/*Wurie* and *Fulton* "do not relieve a defendant of the burden of demonstrating a reasonable expectation of privacy on a cell phone that is searched." *See id*. (citation omitted). Because Mitchell abandoned the Alcatel phone, *Santiago* and *Fulton* do not apply. It necessarily follows that the search of the phone was legal and there is, thus, no suppressible fruit of the poisonous tree, *see Gatlos*, 76 A.3d at 73, and no right for Mitchell, who abandoned the phone, to contest its search and seizure. *See Hall*, ---

A.3d ---, ---, 2023 WL 7266701 at *7. Mitchell's suppression claims regarding the abandoned phone accordingly do not merit relief.[11]

Mitchell's next issue asserts that the trial court erred in admitting the victim's statements to her brother, Overby, pursuant to Pa.R.E. 803(3). Overby testified that Mitchell sold guns and drugs, *see* N.T., 9/23/19, at 48, to establish Mitchell's motive to kill her.

The admission of evidence is within a trial court's sound discretion and will only be reversed where that discretion is clearly abused. *See Commonwealth v. Wilson*, 273 A.3d 13, 19 (Pa. Super. 2022). An abuse of discretion is demonstrated only where the judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id*. (internal citation omitted). It is not enough to persuade an appellate court that it would have reached a different result; an appellant must show that the trial court abused its discretionary power. *See Commonwealth v. Norton*, 201 A.3d

---

[11] Further, in *Riley*/*Wurie*, the Supreme Court expressly stated even in instances where cell phones are searched pursuant to arrest, exigent circumstances may exist that permit a warrantless search of a cell phone, including "to pursue a fleeing suspect." *Riley*/*Wurie*, 573 U.S. 373, 402 (2014). *See also Fulton*, 179 A.3d at 316 n.18 (acknowledging that *Riley*/*Wurie* left open the possibility of exigent circumstances). Here, independent of Mitchell's abandonment of the phone, compelling exigent circumstances may have existed to use the phone to find a fleeing, armed killer.

112, 120 (Pa. 2019).

A statement is hearsay if made out of court and offered in court for the truth of the matter asserted in the statement. *See Commonwealth v. Fitzpatrick*, 255 A.3d 452, 458 (Pa. 2021). Hearsay is inadmissible unless it satisfies a hearsay exception prescribed by statute or rule. *See* Pa.R.E. 802. Evidence of a declarant's then-existing state of mind, not including a statement of memory or belief, is admissible to prove a fact *the declarant* remembered or believed pursuant to the "state of mind" exception to the hearsay rule. *See* Pa.R.E. 803(3). The state of mind hearsay exception, however, does not permit the admission of a declarant's statement to prove the intent or motive of another person. *See Fitzpatrick*, 255 A.3d at 472, 482 (holding that a victim's written assertion that the accused would be responsible if she met an untimely death was an inadmissible factual averment offered to prove the accused's intent).

Mitchell asserts the trial court erred in granting the Commonwealth's motion *in limine* admitting the victim's statement to Overby as evidence of Mitchell's state of mind and his motive, and that he suffered prejudice from that evidence. The trial court asserts it properly admitted the victim's statement as evidence establishing Mitchell's motive to kill the victim. *See* Trial Court Opinion, 8/3/21, at 7-8.

Mitchell is correct, Overby's statement that the victim said Mitchell sold

drugs and guns was not admissible as evidence of **his** (Mitchell's) "state of mind" pursuant to Pa.R.E. 803(3). **See Fitzpatrick**, 255 A.3d at 482. Thus, the trial court erred.

Although we note that Mitchell's analysis is correct, and the trial court erred, that conclusion is not the end of the analysis. The Court must also consider whether the statement's admission was "harmless". An error is harmless only where:

> (1) the error did not prejudice defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Williams,** 274 A.3d 722, 735 (Pa. Super. 2022) (citation omitted and italics added).

At trial, there was one reference in Overby's testimony to Mitchell's sale of guns and drugs. **See** N.T., 9/23/19, at 48. Following this one sentence, Overby testified he overheard an argument outside of his house where Mitchell told the victim, "If you mess up my operation, I will kill you." **See** N.T. 9/23/19, at 50. Overby also testified Mitchell said he "would kill [the victim] if anything happened as far as his operation." **See id**. Mitchell himself also testified at trial that he sold high-grade marijuana. **See** N.T., 9/25/19, 39. The improperly-admitted evidence was thus merely cumulative of other,

untainted evidence of Mitchell's threats to kill the victim if she disclosed those activities. *See Williams*, 274 A.3d at 735.

Alternatively, the prejudicial effect of the error was *de minimis* and the properly admitted and uncontradicted evidence of guilt was overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. In addition to Overby's properly-admitted testimony showing Mitchell threatened to kill the victim if she exposed his operation, there was also untainted and overwhelming evidence regarding Mitchell's guilt. The phone records from the non-Alcatel phones established that Mitchell exchanged a series of angry, menacing, and profane texts with the victim, on one of the three cell phones later found in his possession, over the course of one and one-half hours, and that ended six minutes before the victim's death at 1:58 a.m. *See* N.T. 9/25/19, at 10-16, 48-50, 59-60.

Cell tower address evidence placed the Alcatel phone and Mitchell's other phones at his girlfriend's house, then traveling to the area of the murder at the time it occurred. *See id*. at 78-79. The trial evidence also showed all three phones in Mitchell's possession went from the area of the murder to Mitchell's girlfriend's house shortly after the murder, and Mitchell and his girlfriend left home with their children at approximately 4:00 a.m. and drove to Waterbury, Connecticut. *See id*. at 81-90. Mitchell's brother also testified

that Mitchell called him shortly after the murder and directed him to tell Sutton he should not call or use the Alcatel phone anymore, and Mitchell's brother texted that warning to Sutton. **See** N.T., 9/23/19, at 117, 127-31, 165, 167, 192. In light of this evidence, the improper admission of a single statement from Overby that the victim said Mitchell sold guns and drugs had a *de minimis* effect. **See Williams**, 274 A.3d at 735. Any harm from the introduction of Overby's single statement did not harm Mitchell where the evidence compellingly proved his guilt beyond a reasonable doubt.

Mitchell's next issue asserts the court abused its discretion in denying his pre-trial motion to exclude audio evidence of the shooting.

Before we reach the merits of Mitchell's claim, we must first address whether we have jurisdiction to address it. Mitchell has not identified the place in the record where the recording was played, as the Rules of Appellate Procedure require. **See** Pa.R.A.P. 2119(d). Nor has Mitchell indicated where in the certified record the recording appears. We will not serve as Mitchell's advocate and scour the record for evidence to support his argument. **See Commonwealth v. Leap**, 222 A.3d 386, 391 n.5 (Pa. Super. 2019).[12] Thus, his claim is waived.

_____

[12] Another deficiency of Mitchell's claim is his failure to identify where in the trial record the recording was played, which prevents this Court from
*(Footnote Continued Next Page)*

- 20 -

Even if reviewable, the claim would lack merit. As our Supreme Court has recognized on the related issue of the admissibility of photographs of a murder victim:

[t]o permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

*Commonwealth v. McCutchen*, 454 A.2d 547, 549 (1982). Mitchell's assertion that the screaming and gunshots heard on the tape fails to overcome this standard.[13]

Mitchell's next issue asserts the trial court abused its discretion with its pre-trial ruling that it would admit evidence Mitchell had threatened and physically abused the victim. Once again, we cannot exercise jurisdiction over this claim because Mitchell's brief does not discuss what evidence was at issue

_____

determining if he requested a cautionary instruction concerning the audio evidence and whether the trial court granted any such request.

[13] Moreover, Mitchell's argument that the *audio* evidence was inadmissible because the facts could have been proved by the testimony of witnesses is unpersuasive. That witnesses can describe the condition of a body that photographs also depict does not render those photographs cumulative or inadmissible. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1033 (Pa. 2012). Even allegedly inflammatory evidence is not precluded from admission by the availability of alternative testimony. *See Commonwealth v. Sanchez*, 36 A.3d 24, 49 (Pa. 2011).

(or what evidence was admitted at trial); instead, he offers only a citation to the record of the suppression hearing. We will not scour the record nor develop Mitchell's claim for him; thus, Mitchell waived this claim. *See* Pa.R.A.P. 2119(d); *Leap*, 222 A.3d at 391 n.5.[14]

Mitchell's final issue asserts that the trial court imposed an illegal sentence for possessing an instrument of crime. Our scope and standard of review for assessing the legality of a sentence is as follows:

> If no statutory authority exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and limited to determining whether the trial court committed an error of law.

*Commonwealth v. Dixon*, 161 A.3d 949, 951 (Pa. Super. 2017) (citation omitted).

The trial court itself declared its intention to impose a one-to-two year term of imprisonment for possessing an instrument of crime and a five-to-ten year term of imprisonment for persons not to possess firearms, and

_____

[14] Even were the Court to review Mitchell's undeveloped claim, Mitchell failed to show the trial court abused its discretion by admitting the evidence. Although generally inadmissible, evidence of other crimes or bad acts is admissible, among other purposes, to show the relationship between the parties to prove ill-will, motive, and malice. *See, e.g.*, *Commonwealth v. Johnson*, 289 A.3d 959, 1009 (Pa. 2023). Evidence of Mitchell's prior threats and violence against the victim was admissible pursuant to the well-established case law admitting evidence of prior bad acts by the accused against his victim.

mistakenly imposed two sentences for Count 3, possessing an instrument of crime. **See** Trial Court Opinion, 8/3/21, at 6-7.[15]

Examination of the record confirms the trial court mistakenly pronounced two sentences for Count 3. **See** N.T., 9/26/19, 100-01. We thus remand for correction of Mitchell's sentences in accordance with its stated intention.

In sum, we affirm Mitchell's convictions, vacate the judgments of sentence in part, and remand for the court to correct its self-recognized error at sentencing.

Convictions affirmed; judgment of sentence for first-degree murder affirmed; judgment of sentence for possession of instrument of crime vacated. Case remanded for limited resentencing consistent with this decision. Jurisdiction relinquished.

---

[15] The maximum term of imprisonment for possessing an instrument of crime, a misdemeanor of the first degree, is five years of imprisonment, when the weapon is a concealed firearm or other weapon. **See** 18 Pa.C.S.A. §§ 907(b), 1104(1). The maximum term of imprisonment for person not to possess firearms, a felony of the second degree, is ten years of imprisonment. **See** 18 Pa.C.S.A. §§ 6015(a.1)(1), 1103(2).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/22/2023