J-S12023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
TAHIR YOUNG  :
:
Appellant  :  No. 2061 EDA 2023

Appeal from the Judgment of Sentence Entered March 15, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0001065-2021

BEFORE:  DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:          **FILED SEPTEMBER 18, 2024**

Tahir Young ("Young") appeals from the judgment of sentence entered after his convictions of persons not to possess firearms, firearms not to be carried without a license, possession of a controlled substance, possession of drug paraphernalia, and period for requiring lighted lamps.[1]  On appeal, Young challenges the denial of his appeals from the order denying his motion to suppress evidence seized pursuant to a warrantless search of part of his car, and a statement he made during that search.  We affirm.

As recited by the trial court, the facts related to Young's suppression motion are as follows:

> Prior to trial, [Young] filed a motion to suppress evidence alleging that there was no probable cause present to conduct a warrantless search of [his] vehicle and that the statements made by [Young]

---

[1] See 18 Pa.C.S.A. §  6105(a)(1), 6106(a)(1), 35 P.S. § 780-113(a)(16), (32), 75 Pa.C.S.A. § 4302(a)(1).

were given without [the police] first issuing **Miranda**[2] warnings. At the suppression hearing, the Commonwealth presented the testimony of Officer Geoffrey Walls. Officer Walls testified that he had worked as a patrolman for the City of Chester for four years and was employed there on . . . December 14, 2020. **See** N.T., 7/7/21, at 12. On that date, around 9:21 p.m., while dressed in his police uniform and driving a marked police vehicle, Officer Walls noticed a Silver Nissan Maxima without its taillights on. **See id**. at 13. He pulled the vehicle over in the 100 Block of West 22nd Street and parked behind it. **See id**. The officer testified that after stopping [Young's] car, his police lights remained on and he could see [Young] in the vehicle. **See id**. at 14. He observed [Young] looking back over his left shoulder and then leaning down to the right between the driver's and passenger's seats, at which point, the officer could not see [Young's] head. **See id**. at 14. Officer Walls stated that when [Young] came back up from between the seats, he continued to look over his shoulder, attempting to locate the officer. [Officer Walls] then approached the passenger side window. **See id**. at 14. He stated that [Young] seemed startled . . .. **See id**. at 15.

When Officer Walls requested [Young's] license, registration, and insurance, [Young] was only able to provide him with his license. **See id**. at 15. [Young] told the officer that it was a rental car, and he was unaware of the location of the insurance or the rental agreement documents because it was his girlfriend's rental car. **See id**. at 16. His girlfriend was not present in the vehicle. **See id**. Officer Walls checked the information provided by [Young] then asked [Young] if there was anything illegal in the vehicle, to which [Young] stated there was not. **See id**. The officer then asked [Young] to step out of the vehicle to perform a pat-down for officer safety because the stop occurred at night, in a high crime area, and [Young] was making furtive movements appearing to conceal something under the seat and looking over his shoulder while the officer approached the vehicle. **See id**. at 16, 37. After Officer Walls patted down [Young] for officer safety, the officer had him walk to the back of the vehicle and asked him again if there was anything illegal in the vehicle. [Young] responded affirmatively and stated there was a firearm and cocaine inside the vehicle. **See id**. at 17.

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

The officer testified that the stop was occurring for approximately five minutes before [Young] admitted that there was a firearm and illegal drugs in the vehicle. **See id**. at 18. Officer Walls stated that [Young] was then detained, and the firearm and cocaine were located. **See id**. at 17. Officer Walls testified that the firearm was found underneath the rear of the driver's seat within [Young's] wingspan, where the officer saw [Young] reaching toward after he stopped the vehicle. **See id**. at 19, 75. The officer testified that his police department has a tow policy and that an inventory search is performed when a vehicle is going to be towed. **See id**. at 12. Officer Walls also testified that, even without the contraband, the vehicle may still have been towed because [Young] was unable to produce the rental agreement and was, therefore, unable to prove he had permission to drive the vehicle. **See id**. at 23. Officer Walls testified that [Young] was formally under arrest once the officer located the cocaine and firearm inside the vehicle. See id. at 63.

**See** Trial Court Opinion, 9/26/23, at 1-3 (punctuation, capitalization, and citations standardized). We additionally note that Officer Walls testified Young was the only person in the car and did not know from whom the car was rented or for how long. **See** N.T., 7/7/21, at 14, 16.

The court denied Young's motion after briefing and denied a subsequent reconsideration motion. Following a stipulated bench trial, the court found Young guilty of the above-listed charges. The court imposed an aggregate term of sixty to one-hundred and twenty months of imprisonment.[3] Young

---

[3] The court originally imposed a forty-eight-to-ninety-six-month concurrent term of imprisonment for firearms not to be carried without a license. **See** Sentencing Certificate, 3/15/22. More than thirty days later, the court recognized Young's sentence for firearms not to be carried without a license exceeded the statutory maximum and modified that sentence to a concurrent term of forty-two-to-eighty-four months of imprisonment. **See** Order, 5/11/23. Neither party has raised a challenge to the untimeliness of the sentencing court's modification of its sentence and as the modification does
*(Footnote Continued Next Page)*

filed a timely notice of appeal and he and the trial court complied with Pa.R.A.P. 1925.

Young presents two issues for this Court's review:

1. [Did] [t]he trial court err[] in denying [Young's] motion to suppress evidence[?]

2. [Did] [t]he trial court err[] in admitting and considering evidence which was unlawfully seized[,] at the stipulated non-jury trial[?]

Young's Brief at 4 (capitalization standardized).[4]

Young's issues on appeal relate to the trial court's denial of suppression, and our standard of review regarding a challenge to a trial court's suppression ruling is limited to determining whether the court's findings of fact are supported by the record and the legal conclusions drawn from those facts are correct. *See Commonwealth v. Thomas*, 273 A.3d 1190, 1195 (Pa. Super. 2022). Where the Commonwealth has prevailed below, this Court may only consider the evidence of the prosecution and so much of the defense evidence as remains uncontradicted when read in the context of the record. *See id*. It

_____

not affect the trial court's sentencing rationale, we do not perceive any valid purpose would be served by vacating the modified sentence. *See Commonwealth v. Baio*, 898 A.2d 1095, 1099 (Pa. Super. 2006) (stating that sentencing court is within its jurisdiction to correct an illegal sentence *sua sponte*).

[4] Although these "questions" are so baldly phrased they could constitute a waiver of Pa.R.A.P. 2116, both the parties and the court understand the issues presented, and we decline to find waiver on that basis.

is the suppression court's sole province as fact-finder to pass on the credibility of witnesses and the weight to give their testimony. *See id*. When the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. *See Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).

Our scope of review is limited to the evidentiary record at the suppression hearing. *See Commonwealth v. Smith*, 302 A.3d 123, 126 (Pa. Super. 2023). When an appellant asserts legal error in a suppression court's ruling, it is the Court's duty to determine if the suppression court properly applied the law to the facts. *See id*. at 7. *See Commonwealth v. James Byrd*, 235 A.3d 311, 319 (Pa. 2020) (stating that a suppression court's conclusions and legal rulings are subject to *de novo* review).

Young asserts the police had no right to search the car because they failed to establish probable cause and/or exigent circumstances required by *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), and that traffic stops based on reasonable suspicion must serve a stated investigatory purpose. *See* Young's Brief at 11-14.[5] Young further asserts the police

_____

[5] Young failed to develop the constitutionality of the initial vehicle stop argument, either at the suppression hearing or in his appellate brief when he conceded below (*see* N.T., 7/7/21, at 3-4, 27-28, 47), and on appeal (*see* Young's Brief at 13) that Officer Walls stopped him for a traffic violation, namely Young was observed driving without lights between sunset and sunrise
*(Footnote Continued Next Page)*

stopped him for a minor traffic violation, and improperly prolonged his detention for the purpose of conducting an unlawful search. ***See id***. at 14-15.

The trial court denied suppression based on Young's failure to establish a reasonable expectation of privacy in the car. This was based on the officer's testimony at the suppression hearing that Young said the car was his girlfriend's rental, he did not provide the rental agreement or the insurance information, his girlfriend was not in the car, and Young never subsequently provided the rental agreement. ***See*** Trial Court Opinion, 6/3/22, at 5.

In order to challenge the constitutionality of a search, a defendant must establish a privacy interest in the place or thing invaded that society is prepared to recognize as reasonable. ***See Commonwealth v. Moore***, 310 A.3d 802, 807 (Pa. Super. 2024). If the defendant has no protected privacy interest, he cannot invoke the Fourth Amendment or the Pennsylvania constitution. ***See Commonwealth v. Enimpah***, 106 A.3d 695, 699 (Pa. 2014). The Commonwealth bears the initial burden of production to present evidence the defendant's constitutional rights were not infringed. ***See id***. at 701. Once it does so, the burden shifts to the defendant to show that he had

---

in violation of 75 Pa.C.S.A. § 4302(a)(1). Even had Young preserved a challenge to the propriety of the stop, it would have failed because police have probable cause to stop a car when they observe a violation of the Motor Vehicle Code. ***See Commonwealth v. Bush***, 166 A.3d 1278, 1282 (Pa. Super. 2017).

a reasonable expectation of privacy society is prepared to recognize as reasonable. *See Moore*, 310 A.3d at 807. Where the Commonwealth's evidence shows defendant lacked a privacy interest and his evidence does not effectively rebut the Commonwealth's evidence, the suppression motion must be denied. *See Enimpah*, 106 A.3d at 700. A court considers the totality of the circumstances and the balance of societal interests to determine whether an asserted privacy expectation is reasonable. *See Commonwealth v. Viall*, 890 A.2d 419, 422 (Pa. Super. 2005).

Here, the Commonwealth met its burden of production to present evidence Young's privacy rights were not infringed, *see Enimpah*, 106 A.3d at 701, by demonstrating that the car was not registered in Young's name and Young offered no documentation or testimony showing he was permitted to use the car. Young presented no evidence of a reasonable expectation of privacy in the car to rebut the Commonwealth's evidence.[6] Thus, the trial court properly applied the law concerning Young's failure to demonstrate a reasonable expectation of privacy in the car, and accordingly denied his suppression motion. *See Enimpah*, 106 A.3d at 700-01; *Moore*, 310 A.3d at 808-09 (reversing the grant of suppression of results of a car search where the Commonwealth presented evidence neither Moore nor the other occupant

---

[6] A driver who does not own a vehicle can establish an expectation of privacy if he proves he had permission or authority from the owner to drive it. *See Commonwealth v. Peak*, 230 A.3d 1220, 1225 (Pa. Super. 2020).

of a car owned the car or that Moore had the authority to operate it); ***Commonwealth v. Burton***, 973 A.2d 428, 436 (Pa. Super. 2009) (*en banc*) (defendant failed to establish a reasonable expectation of privacy in a car where he produced only an expired rental agreement in another person's name, that person was not in the car, and defendant was not authorized to operate the car); ***Commonwealth v. Maldonado***, 14 A.3d 907, 911 (Pa. Super. 2011) (holding defendant failed to establish a reasonable expectation of privacy in his girlfriend's car where he presented no evidence he had her permission to do so). Because he failed to demonstrate a reasonable expectation of privacy in the car at issue, Young cannot prevail on his challenge to the seizure of evidence from that car.[7]

Young's second issue implicates when police are required to administer ***Miranda*** warnings before asking questions of an individual.

A person is entitled to ***Miranda*** warnings only when he is subjected to interrogation while in custody of police. Custody occurs only when a person "is physically denied [her] freedom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation." ***Commonwealth v. Cooley***, 118 A.3d 370, 376 (Pa. 2015). In reviewing whether an individual is in

---

[7] Accordingly, we do not reach Young's assertions the police searched the entire car, rather than the area of his wingspan, or that that search violated ***Alexander***.

custody, courts engage in an objective assessment under the totality of the circumstances to determine whether a detention has become so coercive as to constitute the functional equivalent of arrest. *See Commonwealth v. Barnes*, 296 A.3d 52, 59 (Pa. Super. 2023). A court considers: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. *See Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016). Even when an officer draws his weapon during a stop that action does not of its own accord convert an investigative detention into an arrest. *See Commonwealth v. Johnson*, 849 A.2d 1236, 1238-39 (Pa. Super. 2004). A motor vehicle stop is generally regarded as an investigative detention. *See Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023).

An officer may conduct a brief detention of a citizen for investigative purposes based on a reasonable suspicion that criminal activity is afoot. *See Terry v. Ohio*, 392 U.S. 1 (1968). This Court has recognized that "roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *In re O.J.*, 958 A.2d 561, 564 (Pa. Super. 2008) (*en banc*). During a *Terry* investigative car stop, an officer may briefly detain the driver, have him get out of the car, and ask a moderate number of questions

to confirm or dispel the officer's suspicions; where there are specific and articulable facts the driver may be armed and dangerous, the officer may also perform a frisk, not to discover evidence of crime but "to allow the officer to pursue his investigation without fear of violence." ***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011). Police may conduct a protective frisk of an area of a car where they have a reasonable belief a suspect is dangerous and may gain control of a weapon. ***See Commonwealth v. Rosa***, 734 A.2d 412, 417 (Pa. Super. 1999). A suspicion of dangerousness arises where a driver makes furtive movements during a traffic stop and permits a ***Terry*** safety frisk of the areas of the car within the driver's immediate control when the police do not intend to arrest him for the traffic violation but instead to allow him to return to the car. ***See In re O.J.***, 958 A.2d at 566.

Young asserts he was in custody when Officer Walls asked if there was any contraband in the car. ***See*** Young's Brief at 15-16.

The trial court found the traffic stop rose from a mere encounter to an investigative detention, the officer had reasonable suspicion to investigate the observed furtive movements in the car, and Officer Walls's question about contraband was not so coercive as to constitute the functional equivalent of an arrest, but was designed to determine if Young had something in that car that represented a threat to the officer's safety or the safety of others. ***See*** Trial Court Opinion, 9/26/23, at 11.

We affirm the trial court's ruling although on different grounds than those the court cited.[8]  An examination of the totality of the circumstances demonstrates Officer Walls's conducted a traffic stop that constituted an investigative detention which was not so coercive as to rise to the level of an arrest.  The stop occurred at night in response to a traffic violation, the officer observed driver make furtive movements and look over his left shoulder, and at one point could not see Young's head because he had leaned down between the driver and passenger's seat.  The stop was conducted on a public street, in a high crime area, and was of short duration.  Young was not transported against his will, otherwise restrained, or subjected to threats.  Accordingly, at the time of the brief questioning Young was not in custody, and Officer Walls was not required to administer **Miranda** warnings before asking Young about the presence of contraband in the car.  **See Cooley**, 118 A.3d at 376; **Witmayer**, 144 A.3d at 948; **Spence**, 290 A.3d at 315-16 (affirming the lower court's denial of a defendant's motion to suppress his admission of drug use during an investigative detention and finding the detention was not an arrest even though an officer had taken the defendant's car keys, thereby exercising control over his freedom of movement).

Judgment affirmed.

---

[8] It is well-settled that where the result is correct, we may affirm a lower court's decision on any proper ground.  **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/18/2024